## STATE OF CONNECTICUT *v.* CALVIN LONG
### (SC 16899)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued October 22, 2003—officially released April 27, 2004

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, *Vicki Melchiorre,* senior assistant state's attorney, and *Proloy K. Das,* special deputy assistant state's attorney, for the appellant (state).

*Monte P. Radler*, public defender, for the appellee (defendant).

*Richard Blumenthal*, attorney general, and *Richard J. Lynch* and *Patrick B. Kwanashie*, assistant attorneys general, filed briefs for the psychiatric security review board et al. as amici curiae.

*Opinion*

VERTEFEUILLE, J. This appeal concerns the constitutionality of Connecticut's statutory procedures governing the recommitment of insanity acquittees (acquittees), as set forth in General Statutes § 17a-593 (c),[1] which permits a court to extend the commitment of an acquittee past his initial term of commitment if his discharge would constitute a danger to himself or others. The state appeals from the judgment of dismissal rendered by the trial court after it granted the defendant's motion to dismiss the state's petition for an order of continued commitment of the defendant, Calvin Long. We conclude that the trial court improperly determined that § 17a-593 (c) violated the defendant's due process rights under the state constitution and his equal protection rights under the state and federal con-

---

[1] General Statutes § 17a-593 (c), formerly § 17-257n, provides: "If reasonable cause exists to believe that the acquittee remains a person with psychiatric disabilities or mentally retarded to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others, the state's attorney, at least one hundred thirty-five days prior to such expiration, may petition the court for an order of continued commitment of the acquittee."

The statutory scheme providing for acquittee commitment and oversight, which was enacted in 1985 and originally was codified at General Statutes §§ 17-257a through 17-257w, was transferred in 1991 to General Statutes §§ 17a-580 through 17a-603. Subsequently, minor technical changes also have been made to the scheme. See Public Acts 1995, No. 95-257, §§ 11, 48, 58 (changing references to "commissioner of mental health" to "commissioner of mental health and addiction services" and substituting "psychiatric disabilities" for "mental illness"). Substantively, the statutes have not been changed. For purposes of clarity and convenience, references herein to the statutes in this statutory scheme are to the current revision and codification.

stitutions, and, therefore, improperly granted the defendant's motion to dismiss. Accordingly, we reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In March, 1986, the defendant was charged by information with assault in the second degree in violation of General Statutes (Rev. to 1985) § 53a-60,[2] a class D felony, after striking a person in the head several times with a hammer. After a trial to the court, the defendant was found not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13 (a).[3] Pursuant to General Statutes § 17a-582 (a),[4] the trial court then committed the defen-

[2] General Statutes (Rev. to 1985) § 53a-60 provides: "(a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or (4) for a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical impairment or injury to another person by administering to such person, without his consent, a drug, substance or preparation capable of producing the same; or (5) he is in the custody of the commissioner of correction, confined in any institution or facility of the department of correction, or is a parolee from a correctional institution and with intent to cause physical injury to an employee of the department of correction or an employee or member of the board of parole, he causes physical injury to such employee or member.

"(b) Assault in the second degree is a class D felony."

[3] General Statutes § 53a-13 (a) provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

[4] General Statutes § 17a-582 (a), formerly § 17-257c (a), provides: "When any person charged with an offense is found not guilty by reason of mental disease or defect pursuant to section 53a-13, the court shall order such acquittee committed to the custody of the Commissioner of Mental Health and Addiction Services who shall cause such acquittee to be confined, pending an order of the court pursuant to subsection (e) of this section, in any of the state hospitals for psychiatric disabilities or to the custody of

dant to the jurisdiction of the commissioner of mental health and addiction services (commissioner) for initial confinement and examination.[5] After the defendant submitted to a mandatory psychiatric examination, and the commissioner issued a report concerning the defendant's mental health, the court held a hearing pursuant to General Statutes § 17a-582 (d)[6] and (e)[7] to "make a finding as to the mental condition of the [defendant] . . . ." Thereafter, the trial court found that the defendant "is a person who should be confined" and ordered the defendant committed to the jurisdiction of the psychiatric security review board (board) for five years, the maximum period to which the defendant could have been sentenced had he been convicted of the underlying offense.[8]

the Commissioner of Mental Retardation, for an examination to determine his mental condition."

[5] See footnote 1 of this opinion for an explanation of technical changes made to the terminology included in the acquittee commitment and oversight statutory scheme.

[6] General Statutes § 17a-582 (d), formerly § 17-257c (d), provides: "The court shall commence a hearing within fifteen days of its receipt of any separate examination report or if no notice of intent to perform a separate examination has been filed under subsection (c) of this section, within twenty-five days of the filing of such initial examination report."

[7] General Statutes § 17a-582 (e), formerly § 17-257c (e), provides in relevant part: "At the hearing, the court shall make a finding as to the mental condition of the acquittee . . . ."

[8] The trial court acted pursuant to General Statutes § 17a-582 (e) (1), formerly § 17-257c (e) (1), which provides in relevant part: "If the court finds that the acquittee is a person who should be confined or conditionally released, the court shall order the acquittee committed to the jurisdiction of the board and either confined in a hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation, for custody, care and treatment pending a hearing before the board pursuant to section 17a-583; provided (A) the court shall fix a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense . . . ."

General Statutes (Rev. to 1985) § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (6) for a class D felony, a term not less than one year nor more than five years . . . ."

Prior to the expiration of the defendant's five year commitment, the state's attorney, in accordance with § 17a-593 (c), petitioned the Superior Court to extend the defendant's commitment beyond the five year maximum term on the ground that the defendant remained mentally ill to the extent that his discharge would constitute a danger to himself or others. After a hearing, the trial court granted the state's petition and recommitted the defendant for an additional three years. After this initial recommitment, the state successfully petitioned the Superior Court for recommitment of the defendant on three additional occasions. As a result, at the time of filing this appeal, the defendant had been in the custody of the board for more than sixteen years.

In March, 2001, the state filed its most recent petition to recommit the defendant. In response, the board filed a report with the court recommending continued commitment.[9] The defendant then moved to strike the board's report and to dismiss the state's petition for recommitment, claiming, among other things, that "[o]nce an acquittee reaches his/her maximum term of recommitment, the reasoning of *Fasulo* v. *Arafeh*, 173 Conn. 473 [378 A.2d 553] (1977), *State* v. *Metz*, 230 Conn. 400 [645 A.2d 965] (1994), and related cases, by extension, renders a state's petition for recommitment pursuant to . . . [§] 17a-593 (c) unconstitutional in both procedure and effect." Following a hearing, the trial court denied the defendant's motions and granted the state's petition, thereby extending the commitment

---

[9] The board acted pursuant to General Statutes § 17a-593 (d), formerly § 17-257n (d), which provides in relevant part: "The court shall forward any application for discharge received from the acquittee and any petition for continued commitment of the acquittee to the board. The board shall, within ninety days of its receipt of the application or petition, file a report with the court, and send a copy thereof to the state's attorney and counsel for the acquittee, setting forth its findings and conclusions as to whether the acquittee is a person who should be discharged. . . ."

of the defendant pending the filing of a memorandum of decision.

Thereafter, the trial court, sua sponte, reconsidered its earlier rulings, vacated its order of commitment, and granted the defendant's motion to dismiss the state's petition for recommitment based on its conclusion that § 17a-593 (c) is unconstitutional. Specifically, the court concluded that § 17a-593 (c) violated the defendant's due process rights under article first, § 8, of the Connecticut constitution[10] because the statute failed to provide an acquittee with mandatory periodic judicial review of confinement as required by *Fasulo* v. *Arafeh*, supra, 173 Conn. 479. The court also determined that § 17a-593 (c) violated the defendant's equal protection rights under the fourteenth amendment to the United States constitution[11] because it treats acquittees, like the defendant, differently from convicted prisoners who subsequently are civilly committed to a mental hospital at some point after they have been incarcerated (civilly committed inmates). The trial court interpreted this court's decision in *State* v. *Metz*, supra, 230 Conn. 400, to preclude differential treatment between the two classes, and it therefore found § 17a-593 (c) to be unconstitutional. See id.

Lastly, the trial court concluded that § 17a-593 (c) violated the defendant's equal protection rights under article first, § 20, of the Connecticut constitution, as amended by articles five and twenty-one of the amendments.[12] Specifically, the trial court determined that,

---

[10] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions . . . [n]o person shall be . . . deprived of life, liberty or property without due process of law . . . ."

[11] Section 1 of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[12] Article first, § 20, of the Connecticut constitution, as amended by articles five and twenty-one of the amendments, provides in relevant part: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her

under article first, § 20, a statute that discriminates on the basis of mental disability, such as § 17a-593 (c), is subject to strict scrutiny review, and because § 17a-593 (c) fails under rational basis review under the federal constitution, it necessarily fails under the more stringent strict scrutiny standard.

Although the trial court declared § 17a-593 (c) unconstitutional, it nevertheless expressly found that the state had proven, by clear and convincing evidence, that the defendant "has a mental illness and would be a danger to others were he discharged from confinement."[13] The trial court found that "the [defendant] suffers from a form of mental illness diagnosed as schizoaffective disorder, is currently unstable (even with medication), has intermittent paranoia, significant mood swings, is easily provoked, frequently threatening, and threatens serious violence." The court dismissed the state's petition for recommitment, but ordered that the defendant "be held for a period of sixty days from the date of the filing of [its] memorandum to allow the state, if it so elects, to pursue a petition for civil commitment before the Probate Court." The trial court then rendered judgment dismissing the state's petition for recommitment.[14]

Rather than pursue a civil commitment in the Probate Court, the state appealed from the trial court's judgment

civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[13] At the hearing on the state's petition and the defendant's motions, the trial court took the unusual step, with the agreement of the parties, of addressing the merits of the state's petition for recommitment prior to addressing the defendant's motion to dismiss, even though the trial court's ruling on the motion to dismiss could have determined the outcome of the proceedings. Consequently, evidence was presented and findings were made concerning the defendant's mental status, and, after the hearing on the state's petition, the trial court ruled on the defendant's motion to dismiss.

[14] The trial court also denied the defendant's motion to strike the board's report recommending his continued commitment. The defendant does not raise that ruling in the present appeal.

of dismissal to the Appellate Court. We thereafter granted the state's motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

In this appeal, the state challenges all three grounds on which the trial court found § 17a-593 (c) unconstitutional. The state first claims that the trial court improperly granted the defendant's motion to dismiss because § 17a-593 (c), as applied to the defendant, provided him with periodic judicial review sufficient to satisfy his state procedural due process rights. The state also claims that the defendant lacked standing to bring either a state or federal equal protection claim because he was not aggrieved by the alleged differences in recommitment procedures between acquittees and civilly committed inmates. The state further argues that, if this court were to conclude that the defendant had standing to bring his equal protection challenges, § 17a-593 (c) does not violate the defendant's federal equal protection rights because there is a rational basis for the disparate treatment in periodic review accorded acquittees and civilly committed inmates. Similarly, the state argues that § 17a-593 (c) does not violate the defendant's state equal protection rights because the statute discriminates among psychiatrically disabled individuals on the basis of their proven criminal acts, not their mental disability, thereby requiring rational basis review rather than strict scrutiny examination.

We conclude that § 17a-593 (c), as applied to the defendant, provided him with periodic judicial review sufficient to satisfy his state procedural due process rights. We also conclude that the defendant had standing to bring both equal protection challenges, and that his federal equal protection rights were not violated because a rational basis exists for the disparate treat-

ment[15] accorded an acquittee and a civilly committed inmate. Finally, we conclude that, because § 17a-593 (c) discriminates among, rather than between, the protected class of psychiatrically disabled individuals, our prior decisions require us to review the statute under a rational basis standard, rather than apply strict scrutiny review. Thus, because we conclude that a rational basis exists for the disparate treatment under the federal equal protection clause, the defendant's state equal protection guarantees also are necessarily satisfied.

## I

The state's first claim on appeal is that the trial court improperly concluded that § 17a-593 (c) violated the defendant's due process rights under article first, § 8, of the Connecticut constitution because the statute, as applied to the defendant, provided him with periodic judicial review sufficient to satisfy his state procedural due process rights. Specifically, the state argues that the trial court's analysis of the defendant's procedural due process claim was flawed because "[r]ather than determining whether the [defendant], in fact, received periodic judicial review, the trial court concluded that the recommitment statute, *on its face*, violated the [defendant's] due process rights . . . ."[16] (Emphasis

---

[15] It is undisputed by the parties that Connecticut statutes provide disparate commitment and recommitment procedures for acquittees and civilly committed inmates. In particular, the parties agree that the procedures differ in the type and frequency of periodic judicial review afforded acquittees and civilly committed inmates after their initial term of commitment has expired.

[16] The state alternatively argues that, even if this court were to conclude that the judicial review the defendant received via his multiple recommitment hearings did not satisfy his due process rights, "the recommitment statutory scheme provides periodic review sufficient to satisfy *any* acquittee's due process rights under the state constitution." (Emphasis in original.) Because we conclude that § 17a-593 (c), as applied to the defendant, provided him with sufficient periodic judicial review to satisfy his state procedural due process rights, we need not address the state's alternative argument.

added.) We agree.[17]

The following additional facts are relevant to this issue. In October, 1991, as the defendant neared completion of his initial five year commitment period, the state's attorney petitioned the Superior Court, in accordance with § 17a-593 (c), to extend the defendant's commitment beyond the initial five year term on the ground that the defendant remained mentally disabled and would constitute a danger to himself or others if he were discharged. After holding an evidentiary hearing on the merits, the trial court, *Fasano, J.*, found that the state had proven, by clear and convincing evidence, that the defendant was still mentally ill and dangerous, and subsequently recommitted the defendant for three years. In October, 1994, the state's attorney petitioned the Superior Court again for recommitment of the defendant and, following the same procedures, the trial court, *Schimelman, J.*, found that the state had met its burden of proof and recommitted the defendant for an additional two years. In October, 1996, after a hearing on the state's petition, the trial court, *Ward, J.*, recommitted the defendant for an additional eighteen months. In February, 1998, after a hearing, the trial court, *Clif-*

---

[17] The defendant makes two related arguments on appeal for affirming the trial court's judgment. The defendant's primary claim is that the trial court correctly concluded that § 17a-593 (c) violates the defendant's procedural due process rights under the Connecticut constitution because it allows the state to extend the commitment of an acquittee beyond the initial period authorized by § 17a-582 (e) (1) (A) without providing for mandatory periodic judicial review of the extended commitment. We address this claim fully herein. The defendant also argues that § 17a-593 (c) violates his state due process rights on its face because, unlike the statutory recommitment procedures for civil committees, an acquittee is not entitled to obtain a mental examination by two impartial physicians selected by the court in connection with a petition for recommitment. Because we conclude that, § 17a-593 (c), as applied to the defendant, provided him with sufficient periodic judicial review, we need not address the defendant's second facial claim. As we explain herein, the defendant's claim of a violation of his due process rights necessarily requires an "as applied" analysis, and facial claims are simply inapt in this context.

*ford, J.,* recommitted the defendant for an additional eighteen months. In September, 1999, Judge Clifford again recommitted the defendant for a period not to exceed two years. Finally, in these underlying proceedings in 2002, the trial court, *Miano, J.,* held an evidentiary hearing on the state's petition for recommitment before ruling on the defendant's motion to dismiss. After the presentation of extensive evidence, which included expert testimony from both sides, the court concluded that the state had proven, by clear and convincing evidence, that the defendant was still mentally ill and dangerous.

Prior to beginning our due process analysis, we briefly review the statutory commitment scheme for acquittees, as set forth in General Statutes §§ 17a-580 through 17a-603. Under Connecticut law, a defendant charged with a crime may plead as an affirmative defense that at the time he committed the offense, he lacked the requisite mental capacity to commit the charged offense due to a mental disease or defect. See General Statutes § 53a-13. If the trier of fact finds that the defendant has proven this defense by a preponderance of the evidence,[18] the trial court then commits the defendant to the jurisdiction of the board for a maximum term of commitment "not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense . . . ." General Statutes § 17a-582 (e) (1) (A).

The board is "an autonomous body within the Department of Mental Health and Addiction Services for administrative purposes only." General Statutes § 17a-581 (a). It is an administrative body consisting of six members: a psychiatrist; a psychologist; a probation

---

[18] General Statutes § 53a-12 (b) provides: "When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence."

expert; a layperson; an attorney who is a member of the state bar; and a layperson with experience in victim advocacy. General Statutes § 17a-581 (b). The purpose of the board is to manage, monitor and review the status of each acquittee to ensure the protection of the general public. General Statutes § 17a-584; see also 28 S. Proc., Pt. 15, 1985 Sess., pp. 4912–23.

Once committed to the jurisdiction of the board, an acquittee may apply to the Superior Court for release every six months, or the board itself may recommend to the court that the acquittee be discharged from custody.[19] General Statutes § 17a-593 (a). The board also must hold a hearing at least once every two years to determine whether the acquittee should remain committed. General Statutes § 17a-585.

As the acquittee reaches the end of his maximum term of commitment, the state may file a petition with the Superior Court for an order of continued commitment if "reasonable cause exists to believe that the acquittee remains a person with psychiatric disabilities . . . to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others . . . ." General Statutes § 17a-593 (c). The acquittee remains under the jurisdiction of the board until the expiration of the acquittee's most recent commitment term, or until the Superior Court determines the acquittee should be released. General Statutes § 17a-582 (h).

The question of whether the trial court properly concluded that § 17a-593 (c) violates the defendant's procedural due process rights under the Connecticut constitution is a question of law. Accordingly, our

---

[19] The hospital at which the acquittee is confined must submit to the board a written report of the acquittee's mental condition every six months. General Statutes § 17a-586.

review is plenary. See *Duperry* v. *Solnit*, 261 Conn. 309, 318, 803 A.2d 287 (2002).

Our analysis of the trial court's ruling begins with the premise that "a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Rizzo*, 266 Conn. 171, 291, 833 A.2d 363 (2003); see also *Thalheim* v. *Greenwich*, 256 Conn. 628, 647–48, 775 A.2d 947 (2001); *State* v. *Campbell*, 224 Conn. 168, 176, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993). "The court will indulge in every presumption in favor of the statute's constitutionality . . . ." *State* v. *Campbell*, supra, 176. Therefore, "[w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." (Internal quotation marks omitted.) *State* v. *McCahill*, 261 Conn. 492, 504, 811 A.2d 667 (2002).

In the present case, the trial court concluded that § 17a-593 (c) violated the defendant's procedural due process rights[20] under article first, § 8, of the Connecticut constitution because it allows the state to extend the commitment of an acquittee beyond the initial period authorized by § 17a-582 (e) (1) (A) without providing for mandatory periodic judicial review of the extended commitment. In reaching this conclusion, the trial court analyzed § 17a-593 (c) on its face, construing the defen-

[20] Although neither the defendant's motion to dismiss nor the trial court's memorandum of decision specified whether the defendant was claiming a lack of procedural due process or substantive due process, the trial court's analysis was clearly reflective of a procedural due process claim and, therefore, we will analyze it as such.

dant's claim as a facial challenge to the statute.[21] The trial court reasoned that "[t]he problem with the current procedures [under § 17a-593 (c)] is that they fail to adequately protect the right of [a] recommittee to be released when the reasons for confinement no longer exist," as required by *Fasulo* v. *Arafeh*, supra, 173 Conn. 476.[22] The court stated that, although the acquittee statutory scheme "does provide all acquittees with ongoing periodic review *by the board* . . . [r]eview of [a] recommittee's commitment status *by the board* is not 'periodic judicial review' [as required by *Fasulo*] and is no substitute for periodic judicial review." (Emphasis in original.) We conclude that the trial court incorrectly analyzed § 17a-593 as it specifically pertained to the defendant, and, further, that when analyzed on an "as applied" basis, the statute withstands scrutiny under the procedural due process requirements of our state constitution.

We repeatedly have stated that, "[a] procedural due process challenge to the validity of [a statute] cannot proceed in the abstract." *Thalheim* v. *Greenwich*, supra, 256 Conn. 648; see also *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 307, 695 A.2d 1051 (1997); *Sassone* v. *Lepore*, 226 Conn. 773, 779, 629 A.2d 357 (1993). "It is a settled rule of constitutional adjudication that a

[21] "A facial challenge, in this context, means a claim that the law is invalid in toto—and therefore incapable of any valid application." (Internal quotation marks omitted.) *Packer* v. *Board of Education*, 246 Conn. 89, 97 n.14, 717 A.2d 117 (1998); *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982). A "facial" challenge, as compared to an "as applied" challenge "is not dependent on the facts of a particular case." (Internal quotation marks omitted.) *State* v. *Ball*, 260 Conn. 275, 281, 796 A.2d 542 (2002).

[22] In *Fasulo* v. *Arafeh*, supra, 173 Conn. 479, this court concluded that commitment of an individual to a mental hospital must end when the legitimate state interest in confining the person no longer exists, and therefore, in order to satisfy the due process clause of the Connecticut constitution, "involuntarily confined civilly committed individuals [must] be granted periodic judicial reviews of the propriety of their continued confinement."

court will decide the constitutionality of a statute only as it applies to the particular facts at hand. . . . A party who challenges the constitutionality of a statute must prove that the statute has adversely affected a protected interest under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist." (Internal quotation marks omitted.) *City Recycling, Inc.* v. *State*, 247 Conn. 751, 758, 725 A.2d 937 (1999). Therefore, "[a] claim that a statute fails, on its face, to comport with the constitutional requirements of procedural due process reflects a fundamental misunderstanding of the law of due process. Due process is inherently fact-bound because due process is flexible and calls for such procedural protections as the particular situation demands. . . . The constitutional requirement of procedural due process thus invokes a balancing process that cannot take place in a factual vacuum." (Internal quotation marks omitted.) *Thalheim* v. *Greenwich*, supra, 648; see also *Williams* v. *Bartlett*, 189 Conn. 471, 476, 457 A.2d 290 (noting that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" [internal quotation marks omitted]), appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983). Consequently, the issue in the present case, as properly framed, is whether § 17a-593 (c), *as applied to the defendant,* "deprived [him] of [his right] to procedural due process in the particular circumstances of [this] case, and not merely under some possible or hypothetical set of facts not proven to exist." *Sassone* v. *Lepore,* supra, 779; see *DiBerardino* v. *DiBerardino,* 213 Conn. 373, 383, 568 A.2d 431 (1990). We conclude that it did not.

"The United States Supreme Court [has] set forth three factors [which this court has followed] to consider when analyzing whether an individual is constitutionally entitled to a particular judicial or administrative

procedure: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). . . . Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures." (Citations omitted; internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 511–12, 778 A.2d 33 (2001).

Applying this analysis to the facts of the present case, it is undisputed that Connecticut's statutory procedures for the recommitment of acquittees, as set forth in § 17a-593 (c), implicate the defendant's liberty interest. See *Fasulo* v. *Arafeh*, supra, 173 Conn. 476 ("[t]here can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty" [internal quotation marks omitted]); see *Foucha* v. *Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) ("[i]t is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection" [internal quotation marks omitted]). It is also undisputed that the state has an interest in confining individuals who, as a result of mental illness, pose a potential danger to themselves or others. *Jones* v. *United States*, 463 U.S. 354, 361, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983). Thus, the only factor that we must address is whether, based upon the judicial review that the defendant did in fact receive, the defendant's liberty interest was subject to an unreasonable

risk of erroneous deprivation, and the probable value of any additional procedural safeguards.

"The fundamental requisite of due process of law is the opportunity to be heard . . . [which] must be at a meaningful time and in a meaningful manner. . . . [T]hese principles require that a [party] have timely and adequate notice detailing the reasons for [the proposed action], and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." (Citations omitted; internal quotation marks omitted.) *Goldberg* v. *Kelly*, 397 U.S. 254, 267–68, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); see *Giaimo* v. *New Haven*, supra, 257 Conn. 512. In this case, following his initial commitment, the defendant was the subject of five petitions for continued commitment filed by the state's attorney's office and heard by the Superior Court. In each instance, the defendant (1) was given a copy of the petition; see General Statutes § 17a-593 (a);[23] (2) was afforded the right to be present at the hearing and the right to be represented by counsel; see General Statutes § 17a-598 (a);[24] (3) had the right to a separate and independent review of his mental health by an independent psychiatrist or psychologist of his choice; see General Statutes § 17a-593

[23] General Statutes § 17a-593 (a), formerly § 17-257n (a), provides in relevant part: "The court shall send copies of the recommendation [for recommitment] or application [for release] to the state's attorney and to counsel for the acquittee. . . ."

[24] General Statutes § 17a-598 (a), formerly § 17-257s (a), provides: "At any hearing before the court under section 17a-582 or 17a-593, the acquittee shall have the right to appear and shall be represented by counsel. If the acquittee fails or refuses to obtain counsel, the court shall appoint counsel to represent him. If the acquittee is indigent, counsel shall be provided, pursuant to the provisions of chapter 887, and the court shall determine and allow, as provided in section 54-147, the cost of briefs, any other necessary expenses, and compensation of the counsel for the acquittee. The costs, expenses and compensation so allowed shall be paid by the state."

(e);[25] and (4) had the right to examine all documents and reports considered by the court in preparation of his defense. See General Statutes § 17a-598 (b).[26] In each instance, the defendant was in fact represented by counsel, supplied by the state. Furthermore, prior to each hearing, the board filed a report with the court, and gave copies to the defendant and the state, as to whether the defendant should be discharged. See General Statutes § 17a-593 (d). In each instance, the trial court ordered the defendant recommitted for periods ranging from eighteen months to three years. During the term of recommitment, the defendant had the right to apply directly to the court for his discharge every six months; see General Statutes § 17a-593 (a);[27] however, he never exercised that right. Had the defendant submitted such an application at any point during his commitment, the court would have been required to hold a judicial hearing on whether the defendant should be discharged. See General Statutes § 17a-593 (f).[28] Dur-

[25] General Statutes § 17a-593 (e), formerly § 17-257n (e), provides in relevant part: "Within ten days of receipt of a recommendation for discharge filed by the board . . . or receipt of the board's report . . . either the state's attorney or counsel for the acquittee may file notice of intent to perform a separate examination of the acquittee. An examination conducted on behalf of the acquittee may be performed by a psychiatrist or psychologist of the acquittee's own choice and shall be performed at the expense of the acquittee unless he is indigent. If the acquittee is indigent, the court shall provide him with the services of a psychiatrist or psychologist to perform the examination at the expense of the state. . . ."

[26] General Statutes § 17a-598 (b), formerly § 17-257s (b), provides: "At any hearing before the court under section 17a-582 or 17a-593, documents and reports considered by the court shall be available for examination by the acquittee, counsel for the acquittee and the state's attorney."

[27] General Statutes § 17a-593 (a), formerly § 17-257n (a), provides in relevant part: "An acquittee may apply for discharge not more than once every six months and no sooner than six months after the initial board hearing held pursuant to section 17a-583."

[28] General Statutes § 17a-593 (f), formerly § 17-257n (f), provides in relevant part: "After receipt of the board's report and any separate examination reports, the court shall promptly commence a hearing on the recommendation or application for discharge or petition for continued commitment. . . ."

ing his term of recommitment, the board received a report every six months from the hospital where he was confined. See General Statutes § 17a-586.[29] Furthermore, the board was required to hold a hearing on the defendant's mental status once every two years; see General Statutes § 17a-585; and the board had the option to recommend to the court that the defendant be discharged pursuant to § 17a-593 (a). The board never did so.

We conclude that these existing statutory procedures, as applied to the defendant, did not expose him to an unreasonable risk of erroneous deprivation of his liberty. We further conclude that there would be little value in the imposition of additional procedural safeguards, such as mandatory judicial review without a petition being filed during the term of recommitment. Accordingly, we conclude that § 17a-593 (c), as applied to the defendant, did not violate the defendant's procedural due process rights under article first, § 8, of our state constitution.

## II

The state next claims that the trial court improperly granted the defendant's motion to dismiss in concluding that § 17a-593 (c) violates the defendant's right to equal protection under both the fourteenth amendment to the United States constitution, and article first, § 20, of the Connecticut constitution, as amended. The state claims first that "the [defendant] has no standing to bring . . .

[29] General Statutes § 17a-586, formerly § 17-257g, provides: "The superintendent of any hospital for psychiatric disabilities in which an acquittee has been confined or the Commissioner of Mental Retardation with whom an acquittee has been placed pursuant to order of the board, or the person or agency responsible for the supervision or treatment of a conditionally released acquittee, shall submit to the board at least every six months a written report with respect to the mental condition of the acquittee. The board shall furnish copies of the report to the counsel for the acquittee and the state's attorney."

[either] equal protection claim because he was not aggrieved by the alleged differences in treatment; hence, his equal protection claim is not justiciable." The state also argues that, even if we conclude that the defendant did have standing to bring his equal protection claims, the trial court nonetheless improperly concluded that § 17a-593 (c) violates the defendant's federal equal protection rights because a rational basis exists for the disparate treatment between acquittees and civilly committed inmates. Additionally, the state contends that § 17a-593 does not violate the defendant's state equal protection rights because the statute discriminates among insane individuals on the basis of their proven criminal acts, rather than their mental disability, thereby requiring rational basis review, as opposed to the strict scrutiny standard employed by the trial court. Thus, the state argues, since a rational basis exists for the disparate treatment under the federal equal protection clause, the defendant's state equal protection guarantees also are necessarily satisfied. We disagree with the state's claim with regard to standing, but agree with both of its substantive arguments.

In part I of this opinion, we reviewed the basic structure of the statutory commitment scheme regarding acquittees. In order fully to address the state's claims, we must also consider the relationship between the statutory commitment scheme for acquittees and the statutory commitment scheme for civil committees, as set forth in General Statutes §§ 17a-495 through 17a-528.

As we previously have noted herein, Connecticut law allows a defendant charged with a crime to *raise* the affirmative defense of lack of capacity due to mental disease or defect. General Statutes § 53a-13. In contrast, civil commitment generally is an involuntary process, initiated by someone other than the committee. See General Statutes § 17a-497 (a). Thus, while an acquittee may acquire that status of his own volition, i.e., by

raising his diminished mental capacity as an affirmative defense, any person may file an application for the civil commitment of an individual with the Probate Court for the district in which the potential committee resides. General Statutes § 17a-497 (a).[30]

After civil commitment proceedings are commenced, the individual who is the subject of the proceedings, whether a private citizen or a current inmate in the prison system, has a right to a hearing on the merits before the Probate Court. General Statutes § 17a-498 (a).[31] If the Probate Court finds, by clear and convincing evidence, that the potential committee has "psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled," it issues an order for his or her commitment. General Statutes § 17a-498 (c).[32] The committed individual then remains under the jurisdiction of the Probate Court until his or her release from commitment. General Statutes § 17a-497 (a).[33]

---

[30] General Statutes § 17a-497 (a) provides in relevant part: "Courts of probate shall exercise . . . jurisdiction [over the civil commitment of an individual] only upon written application alleging in substance that such person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled. Such application may be made by any person . . . ."

[31] General Statutes § 17a-498 (a) provides in relevant part: "Upon [application for commitment] being filed in the Probate Court, such court shall assign a time, not later than ten business days thereafter, and a place for hearing such application, and shall cause reasonable notice thereof to be given to the respondent and to such relative or relatives and friends as it deems advisable. . . ."

[32] General Statutes § 17a-498 (c) provides in relevant part: "If, on such hearing, the court finds by clear and convincing evidence that the person complained of has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, it shall make an order for his or her commitment . . . to a hospital for psychiatric disabilities to be named in such order, there to be confined for the period of the duration of such psychiatric disabilities or until he or she is discharged or converted to voluntary status pursuant to section 17a-506 in due course of law. . . ."

[33] General Statutes § 17a-497 (a) provides in relevant part: "In any case in which the person is hospitalized in accordance with the provisions of sections 17a-498, 17a-502 or 17a-506, and an application for the commitment of such person is filed in accordance with the provisions of said sections,

The hospital in which the individual is committed annually must notify the committee that he has a right to an additional hearing regarding his continued commitment. General Statutes § 17a-498 (g).[34] That statute also provides that if the committee does not request such a hearing, or the hearing does not result in his release, the Probate Court must hold a hearing at least once every two years to revisit the issue of continued commitment.[35] It is this required biennial judicial review, which is not applicable to acquittees, that is the principal distinction in the recommitment processes for civil committees and acquittees.

Prior to beginning our analysis, we set forth the applicable standard of review. The question of whether the trial court properly concluded that § 17a-593 (c) violates the defendant's state and federal equal protection rights presents a question of law, over which our review is plenary. See *Duperry* v. *Solnit,* supra, 261 Conn. 318.

A

We begin with the state's claim that the defendant lacked standing to bring either a state or federal equal protection challenge to § 17a-593 (c). The state argues that the defendant was not aggrieved by any potential disparity in the frequency of periodic judicial review afforded by the statutory recommitment procedures for an acquittee as compared to those provided for a civilly committed inmate because he in fact received more

the jurisdiction shall be vested in the court of probate for the district in which the hospital where such person is a patient is located. . . ."

[34] General Statutes § 17a-498 (g) provides in relevant part: "The hospital shall notify each patient at least annually that such patient has a right to a further hearing pursuant to this section. . . . If the patient's last annual review did not result in a hearing, and in any event at least every two years, the probate court notified shall, within fifteen business days, proceed with a hearing . . . ."

[35] If the state wishes to commit an incarcerated person whose sentence is nearing completion, the state must follow the procedures for civil commitment. See General Statutes § 17a-515.

judicial review than a civil committee is entitled to receive. Therefore, the state claims, the defendant lacked standing to bring either of his equal protection challenges. We disagree.

"The issue of standing implicates this court's subject matter jurisdiction." *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 21, 31, 755 A.2d 860 (2000), overruled in part on other grounds, *Waterbury* v. *Washington*, 260 Conn. 506, 545, 800 A.2d 1102 (2002); see also *Steeneck* v. *University of Bridgeport*, 235 Conn. 572, 580, 668 A.2d 688 (1995) ("[w]here a plaintiff lacks standing to sue, the court is without subject matter jurisdiction"). "[O]nce the question of lack of jurisdiction of a court is raised . . . the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 579, 833 A.2d 908 (2003). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming

aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 567–68, 775 A.2d 284 (2001).

In the present case, it is uncontested that the defendant has a specific, personal and legal liberty interest in any recommitment proceedings instituted by the state in accordance with § 17a-593 (c). The state contends, however, that the defendant's liberty interest is not "specially and injuriously affected"; id., 568; because the defendant, as an acquittee, received more judicial review than a civil committee is entitled to receive. To substantiate this claim, the state cites to the defendant's numerous appearances before the Superior Court "via his multiple [recommitment hearings] in 1991, 1994, 1996, 1998, 1999 and 2002," as well as his statutory right to judicial review every six months under § 17a-593 (a), and his right to review by the board every two years in accordance with § 17a-585. We acknowledge that the judicial review afforded the defendant in the past may have exceeded what he would have received if he had been civilly committed. The state's argument nevertheless must fail because it neglects to recognize that classical aggrievement may rest on the likelihood of the defendant's future recommitment.

We previously have concluded that "a genuine likelihood of criminal liability or civil incarceration is sufficient to confer standing." (Internal quotation marks omitted.) *Ramos* v. *Vernon*, 254 Conn. 799, 809, 761 A.2d 705 (2000); see also *Kuser* v. *Orkis*, 169 Conn. 66, 73–74, 362 A.2d 943 (1975) (court stated, in dictum, that genuine likelihood of civil incarceration would confer

standing). In *Ramos*, one of the issues before this court was whether the plaintiff had standing to challenge a juvenile curfew ordinance that potentially could apply to him in the future. *Ramos* v. *Vernon*, supra, 808–11. We concluded that, because "the litigant's alleged activity is proscribed by the ordinance as 'unlawful' . . . and [the ordinance sets forth procedures] in which the litigant may be referred to Juvenile Court for violation of its terms," he therefore was classically aggrieved and had standing to challenge the ordinance. (Citations omitted.) Id., 810.

Similarly, in the present case, the defendant challenges the acquittee recommitment statute, § 17a-593 (c), which, if applied to him in the future, could subject him to further recommitment that adversely would affect his liberty interest. Moreover, the trial court specifically found at the most recent recommitment hearing that the defendant still suffered from a "mental illness" and posed "a danger to others were he discharged from confinement." These factual findings demonstrate a genuine likelihood that the defendant is susceptible to the deprivation of his liberty interest in the future via recommitment in accordance with § 17a-593 (c). Consequently, because the defendant risks actual prospective deprivation of his liberty interest under the challenged statute, we conclude that he is classically aggrieved, and has standing to challenge the statute.

B

We next address the state's substantive claim that § 17a-593 (c) does not violate the defendant's federal equal protection rights because there is a rational basis for the disparate treatment between acquittees and civilly committed inmates. Specifically, the state contends that the state legislature reasonably could have determined that disparate treatment of the classes of individ-

uals was warranted because: (1) the board has general and specific familiarity with the acquittees and therefore is better equipped to regulate their commitment; and (2) the risk of erroneous commitment based on idiosyncratic behavior is far less for an acquittee and therefore the additional mandatory judicial review procedures provided for civilly committed inmates are unnecessary for acquittees.[36] We agree.

"In order to analyze [the defendant's claim], we first must detail the principles applicable to equal protection analysis. . . . First, in general, as in any constitutional challenge to the validity of a statutory scheme, the [statutory scheme] is presumed constitutional . . . and [t]he burden is on the [party] attacking the legislative arrangement to negative every conceivable basis which might support it . . . . *Heller* v. *Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). . . .

"Moreover, [t]o implicate the equal protection [clause] under the . . . federal [constitution] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . Thus, the analytical predicate [of consideration of an equal protection claim] is a determination of who are the persons similarly situated." (Citations omitted; internal quotation marks omitted.) *State* v. *Moran*, 264 Conn. 593, 606, 825 A.2d 111 (2003).

"The equal protection clause does not require absolute equality or precisely equal advantages. . . . Rather, a state may make classifications when enacting or carrying out legislation, but in order to satisfy the

---

[36] The state also argues that the legislature reasonably could have concluded that an acquittee presumptively is more dangerous than a civilly committed inmate, and therefore warrants disparate treatment, since, as a matter of law, the acquittee's criminal conduct was the product of his mental illness. Because we find that rational basis review is satisfied on other grounds, we need not address this argument.

equal protection clause the classifications made must be based on some reasonable ground. . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. *Dunn* v. *Blumstein*, 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972)." (Citations omitted; internal quotation marks omitted.) *Franklin* v. *Berger*, 211 Conn. 591, 595, 560 A.2d 444 (1989). "Where . . . the classification at issue neither impinges upon a fundamental right nor affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis. . . . Rational basis review is satisfied so long as there is a plausible policy reason for the classification . . . . [I]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature." (Internal quotation marks omitted.) *State* v. *Moran*, supra, 264 Conn. 607.

It is undisputed that § 17a-593 (c) neither affects a suspect group nor implicates a fundamental right for the purposes of the federal equal protection clause, and therefore must be analyzed under rational basis review. See, e.g., *Board of Trustees of the University of Alabama* v. *Garrett*, 531 U.S. 356, 366–67, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001) (holding statutes that discriminate on basis of physical or mental disability are subject to rational basis review).[37] Furthermore, we assume arguendo, without deciding, that acquittees are similarly situated to civilly committed inmates. See *State* v. *Wright*, 246 Conn. 132, 143, 716 A.2d 870 (1998) (this court frequently has assumed arguendo that categories of defendants are similarly situated with respect to chal-

---

[37] Since both physical and mental disabilities are subject to rational basis review under the federal equal protection clause, we need not determine whether the defendant's insanity is a result of a physical or mental disability.

lenged statute). Thus, we next turn to whether "there is a plausible policy reason for the classification . . . ." (Internal quotation marks omitted.) *State* v. *Moran*, supra, 264 Conn. 607. In the present case, we have no difficulty in ascertaining two rational reasons for the disparate treatment in statutory recommitment procedures for acquittees as compared to civilly committed inmates.

First, under the acquittee statutory scheme, the board has general and specific familiarity with all acquittees beginning with their initial commitment and, therefore, is better equipped than courts to monitor their commitment. By placing oversight of these individuals in a single administrative agency, such as the board, which is comprised of laypersons and experts in relevant areas, including psychiatry, psychology, probation, and victim advocacy, the legislature reasonably could have believed that the board, with its expertise and familiarity with the mental status of each acquittee, would be better equipped than a court to monitor the individuals' recommitment. This furthers the legislature's legitimate interest in efficiently managing the recommitment of acquittees. See *Donahue* v. *Southington*, 259 Conn. 783, 798, 792 A.2d 76 (2002) (concluding that efficient management of administrative system is legitimate reason for disparate treatment).

Second, the state clearly has an interest in ensuring that its citizens are not erroneously committed based on harmless, idiosyncratic behavior. See *Addington* v. *Texas*, 441 U.S. 418, 426–27, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). The legislature, however, reasonably could have concluded that the risk of erroneous commitment is far less for an acquittee and, therefore, additional mandatory judicial review during the recommitment is unnecessary. Specifically, the legislature could have determined that the likelihood of an erroneous commitment is reduced in the case of an acquittee because an

acquittee initiates the commitment process himself by pleading and proving the mental illness that led to his commission of a crime. As the United States Supreme Court stated in *Jones*: "[S]ince [commitment as an acquittee] follows only if the *acquittee himself* advances insanity as a defense and proves that his criminal act was a product of his mental illness, there is good reason for diminished concern as to the risk of error. More important, the proof that he committed a criminal act as a result of mental illness eliminates the risk that he is being committed for mere idiosyncratic behavior . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Jones* v. *United States*, supra, 463 U.S. 367.

Accordingly, we conclude that a rational basis exists for the legislature's differential treatment of acquittees and civilly committed inmates, and, therefore, § 17a-593 (c) does not violate the defendant's federal equal protection guarantees.[38]

## C

The state's final claim is that the trial court, in concluding that § 17a-593 (c) violated the defendant's equal protection rights under the Connecticut constitution, incorrectly applied a strict scrutiny standard to the defendant's state equal protection claim. Specifically, the state argues that § 17a-593 (c) does not violate the defendant's state equal protection rights because the

[38] The defendant claims that the trial court, relying on language in this court's decision in *State* v. *Metz*, supra, 230 Conn. 424, was correct when it held that there is "no constitutional justification for a categorical distinction between [an acquittee and a civilly committed inmate]," and therefore "there is no rational basis ground to support the disparate treatment of the [defendant]." (Internal quotation marks omitted.) We disagree. This court in *Metz* did not address the issue of whether § 17a-593 (c) violated an acquittee's constitutional guarantees. Rather, *Metz* was a statutory construction case concerning the burden of proof for recommitment that merely employed constitutional principles to aid in its analysis.

statute discriminates *among* psychiatrically disabled individuals on the basis of a proven criminal act, rather than mental disability, thereby requiring rational basis review rather than strict scrutiny. Therefore, the state contends, since a rational basis exists for the disparate treatment under the federal equal protection clause, the defendant's state equal protection guarantees are also necessarily satisfied. We agree.[39]

Article first, § 20, of the Connecticut constitution, as amended by articles five and twenty-one of the amendments, provides that "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or *mental disability.*" (Emphasis added.) In *Daly* v. *DelPonte*, 225 Conn. 499, 515, 624 A.2d 876 (1993), this court concluded that the "protection [under article twenty-one of the amendments] for those possessing physical and mental disabilities identifies the members of this class as a group especially subject to discrimination . . . ." Therefore, the amendment's prohibition of discrimination against that class of individuals requires "encroachments on these rights to pass a strict scrutiny test." Id., 514.

"We previously have noted that strict scrutiny is required only when a state action invidiously discriminates against a suspect class or affects a fundamental

---

[39] The issue of whether heightened review is appropriate when analyzing a state equal protection challenge to the disparate recommitment procedures for acquittees and civilly committed inmates is a question of first impression. This court, in *State* v. *Metz*, supra, 230 Conn. 424 n.17, specifically held that "[b]ecause [we] construe General Statutes § 17a-593 (c) to negate the disparate treatment of acquittees from other civil committees with respect to the allocation of the burden of persuasion at a hearing for a period of continued commitment, [this court] need not decide whether heightened review would be appropriate in a constitutional analysis of the disparate treatment of acquittees and civil committees in another context."

right . . . . The United States Supreme Court has explained, with respect to those presumptively invidious classifications; *Plyler* v. *Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982); such as alienage and race, that [t]hese factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others. . . . *Barannikova* v. *Greenwich*, 229 Conn. 664, 676, 643 A.2d 251 (1994). Accordingly, when the state discriminates against the disabled, or a class of the disabled, in favor of the able-bodied, invidious discrimination is presumed and strict scrutiny is applied. . . .

"On the other hand, when the state discriminates *amongst* members of the protected class, invidious discrimination cannot necessarily be presumed. . . . [I]n order for strict scrutiny to apply to a . . . statute that discriminates amongst the disabled, there must be evidence, either on the face of the statute or from its legislative history, that the legislature intended to discriminate invidiously on the basis of disability. See *Benjamin* v. *Bailey*, 234 Conn. 455, 479, 662 A.2d 1226 (1995) (plaintiffs . . . carry the burden of demonstrating invidious discrimination and of rebutting the presumption of constitutionality)." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 343–45, 819 A.2d 803 (2003).

In the present case, acquittees and civilly committed inmates are both members of the same class, namely the psychiatrically disabled. What differentiates these two groups for the purposes of recommitment procedures is the acquittee's proven criminal offense, which has been adjudicated to be the product of mental illness.

A verdict of not guilty by reason of mental disease or defect establishes two facts: (1) the person committed an act that constitutes a criminal offense; and (2) he committed the act because of mental illness. See, e.g., General Statutes § 53a-13; *Jones* v. *United States*, supra, 463 U.S. 363. Thus, unlike a civilly committed inmate, an acquittee has proven to the fact finder that his mental disease or defect caused him to commit a crime, thereby establishing a legal nexus between the acquittee's mental illness and the criminal act. Because criminality is inextricably intertwined with mental illness under the acquittee recommitment statutory scheme, but not under the analogous scheme for civil committees, it is reasonable to conclude that the legislature, when enacting § 17a-593 (c), did not intend to discriminate invidiously on the basis of mental disability, but, rather, upon the fact that the acquittee committed a crime that was the result of his mental disability. See *Rayhall* v. *Akim Co.*, supra, 263 Conn. 344–45; cf. *Foti* v. *Richardson*, 30 Conn. App. 463, 468–69, 620 A.2d 840 (1993) (disparate treatment of plaintiff with autism predicated on absence of mental retardation as basis for ineligibility for services by department of mental retardation; rational basis, rather than strict scrutiny, applied). Accordingly, we conclude that § 17a-593 (c) is subject to rational basis review under the equal protection clause of the state constitution. *Rayhall* v. *Akim Co.*, supra, 344.

Because we have concluded that the defendant's federal equal protection claim satisfies rational basis review, it is axiomatic that the same conclusion satisfies state equal protection analysis. See *Horton* v. *Meskill*, 172 Conn. 615, 639, 376 A.2d 359 (1977) ("[t]his court has many times noted that the equal protection clauses of the state and federal constitutions have a like meaning and impose similar constitutional limitations"); see also *State* v. *Rao*, 171 Conn. 600, 601, 370 A.2d 1310

(1976); *Kellems* v. *Brown*, 163 Conn. 478, 485, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); *Snyder* v. *Newtown*, 147 Conn. 374, 381, 161 A.2d 770 (1960), appeal dismissed, 365 U.S. 299, 81 S. Ct. 692, 5 L. Ed. 2d 688 (1961).

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.