STATE OF CONNECTICUT *v.* GREGORY GILLESPIE
(AC 25564)

Flynn, DiPentima and McLachlan, Js.

144

Argued May 31—officially released November 1, 2005

*Monte P. Radler*, public defender, for the appellant (acquittee).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Vicki Melchiorre*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The acquittee, Gregory Gillespie, appeals from the trial court's judgment dismissing the state's petition to continue his commitment to the psychiatric security review board (board). He claims that the court improperly denied his motion to dismiss the petition for lack of subject matter jurisdiction due to the state's use of an incorrect docket number in referencing the matter for which he had been committed. Although the acquittee is arguably not aggrieved by the judgment of dismissal, which the court based on constitutional grounds, we conclude that the acquittee is aggrieved because of the conditional nature of that dismissal and

because the acquittee claims that he is entitled to an unconditional dismissal. On appeal, the acquittee claims that the court improperly concluded that the state's use of an incorrect docket number was a circumstantial defect subject to correction under General Statutes § 52-123. We disagree and conclude that the court had jurisdiction to open the judgment to correct the docket number. However, we reverse the court's judgment dismissing the state's petition for continued commitment to the board.

Certain procedural history is pertinent to our review. Under docket number CR74-175185, the defendant was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) in connection with the shooting of Wade Foote (Foote case). He was acquitted by reason of mental disease or defect.

Subsequently, while on conditional release during his commitment in the Foote case, the acquittee was charged with the crime of murder, under docket number CR76-197288, in violation of General Statutes § 53a-54a for fatally shooting a former girlfriend, Shereese Weatherly (Weatherly case). He also was found not guilty of that crime by reason of mental disease or defect and ultimately was placed under the jurisdiction of the board pursuant to General Statutes § 17a-602. His commitment was for a period of twenty-five years commencing January 25, 1979.

On August 7, 2003, the state filed a petition for an order of continued commitment of the acquittee in connection with the Weatherly case pursuant to General Statutes § 17a-593 (c). That petition was filed under the wrong docket number, CR74-175185, the docket number from the Foote case. Neither the state nor the acquittee brought this error to the court's attention at that time.

Using the incorrect docket number of the Foote case, the acquittee filed a motion to dismiss the state's petition on constitutional grounds, claiming that the petition should be dismissed because § 17a-593 (c) violated the acquittee's constitutional rights to due process and equal protection. The acquittee's motion to dismiss, although mistakenly referencing the wrong docket number, nonetheless correctly referenced the murder charge, which had resulted in his commitment with respect to the Weatherly case. The court dismissed the petition, but stayed its ruling because an appeal had been taken to our Supreme Court involving a similar issue in *State* v. *Long*, 268 Conn. 508, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004), which was still pending before our Supreme Court at that time.

The state appealed from the dismissal of the petition and, after discovering that the wrong docket number had been used, filed a motion in the trial court to open the judgment to correct the docket number to the number assigned to the acquittee's murder file in the Weatherly case. The acquittee then moved to dismiss the state's petition to extend the commitment because he claimed that the mistake in the docket number was a substantive defect depriving the court of jurisdiction.[1]

On April 27, 2004, our Supreme Court rendered its decision in *State* v. *Long*, supra, 268 Conn. 508. It held that § 17a-593 (c) did not violate an acquittee's federal or state equal protection rights, that the statute did not affect a suspect class or a fundamental right and that there was a rational basis for different treatment of insanity acquittees from civilly committed inmates who have a periodic review of their commitment every two years.

---

[1] The acquittee based his second motion to dismiss on the assumption that the court would grant the state's motion to open.

Approximately one month after our Supreme Court's decision in *Long*, the trial court, on May 21, 2004, denied the acquittee's motion to dismiss. The court found that the incorrect docket number was merely a "scrivener's" or "circumstantial" error and granted the state's motion to open to correct the docket number error. The court additionally ordered that "[t]he orders of the court on December 23, 2003, stand—and said orders are applied to Docket No. CR76-197288—subject to the effect of the Supreme Court ruling in *State* v. *Long* [supra, 268 Conn. 508]." The effect of that order was to enter in the Weatherly case (docket number CR-197288) the court's judgment dated December 23, 2003, and filed January 6, 2004, dismissing on constitutional grounds the state's motion to extend the commitment. The court obviously took into account in entering its order the petition for certiorari to the United States Supreme Court filed by the acquittee in the *Long* case, which was still pending at the time of the May 21 order, but which subsequently was denied on November 1, 2004. See *State* v. *Long*, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004).

In this appeal, we first address the issue raised separately by the acquittee, namely, whether the court lacked subject matter jurisdiction to consider the state's petition to extend the acquittee's commitment because the state, in its petition, improperly used the docket number from the Foote case rather than from the Weatherly case.

In its decision filed May 21, 2004, the trial court found on the basis of facts not in dispute, that "[o]n or about July 30, 2003, as [the acquittee's] release date on Docket Number CR76-197288 approached, the state petitioned the court for continued commitment of the [acquittee] beyond the January 24, 2004 date pursuant to General Statutes § 17a-593 (c). The state in its motion for continued commitment did inadvertently file the petition under the wrong docket number—CR74-

175185—the docket number assigned to the [Foote case].

"On December 23, 2003, a hearing was held relevant to the state's petition for continued commitment beyond the January 24, 2004 date pursuant to § 17a-593 (c). The parties stipulated to certain facts relevant to the procedural and substantive history of [the acquittee's murder case] (CR76-197288).

"After the hearing, and based upon the stipulation of facts entered into by the parties, the court denied the state's petition for continued commitment of [the acquittee] and granted the [acquittee's] motion to dismiss relying on its decision in *State* v. *Long* [Superior Court, judicial district of Hartford, Docket No. 308773 (September 3, 2002)]."

In its memorandum of decision filed May 21, 2004, the court concluded that "[t]he fact that the state inadvertently affixed to this file the docket number of a defunct matter does not elevate the error to one of a substantive nature" and found that "the affixing to the subject file an incorrect docket number is a 'scrivener's' or 'circumstantial' defect that does not vitiate the subject matter jurisdiction of the court." This appeal followed.

Whether the trial court has subject matter jurisdiction is a question of law over which we exercise plenary review. *Neiman* v. *Yale University*, 270 Conn. 244, 251, 851 A.2d 1165 (2004).

On appeal, the acquittee claims that the state's use of an incorrect docket number in its petition for continued commitment was a substantive defect implicating the subject matter jurisdiction of the court. Specifically, the acquittee claims that the recommitment proceedings conducted under the docket number from the Foote case (CR74-175185) were a nullity, and the state's plead-

ings *related to that separate Foote case.* He claims that the proceedings were a nullity because his commitment in the Foote case had expired in 1995, and the state did not file for recommitment in the Weatherly case when that commitment expired in January, 2004. While the acquittee argues that the error constituted a substantive defect that deprived the court of subject matter jurisdiction, the state contends that the use of an incorrect docket number was a circumstantial defect that was curable by § 52-123 and did not deprive the court of jurisdiction. We agree with the state.

General Statutes § 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court." "Section 52-123 is a remedial statute and therefore it must be liberally construed in favor of those whom the legislature intended to benefit. . . . [Section] 52-123 replaces the common law rule that deprived courts of subject matter jurisdiction whenever there was a misnomer or misdescription in an original writ, summons or complaint." (Citations omitted; internal quotation marks omitted.) *Andover Ltd. Partnership I* v. *Board of Tax Review,* 232 Conn. 392, 396–97, 655 A.2d 759 (1995).

Defective pleadings are broken down into two categories: circumstantial defects, which are subject to correction under § 52-123, and substantive defects, which are not. See *First Federal Savings & Loan Assn. of Rochester* v. *Pellechia,* 31 Conn. App. 260, 264–65, 624 A.2d 395, cert. denied, 227 Conn 923, 632 A.2d 701 (1993). "Circumstantial defects not subject to abatement by reason of § 52-123 or its predecessors have included the mistaken use of a Practice Book form . . . failure to designate an apartment number in a writ . . . an erroneous reference in appeal papers to next term

instead of next return day . . . a copy of the affidavit attached to the writ served upon the defendant that did not bear the signature of the affiant . . . an erroneous reference in the return to the City Court held at New Haven in and for the city of New Haven instead of The City Court of New Haven . . . an erroneous prayer for relief on the writ and declaration rather than on the writ alone . . . and a defendant who had signed his name in the body of a plea in abatement signed *defendant* at the end of the plea instead of again signing his name. . . . In contrast, substantive defects are those that are subject to abatement. . . . They involve defects or irregularities in the service or return of process and other matters that implicate the court's subject matter jurisdiction." (Citations omitted; emphasis added; internal quotation marks omitted.) Id.; see *Rogozinski* v. *American Food Service Equipment Corp.*, 211 Conn. 431, 434–35, 559 A.2d 1110 (1989) (failure to return process to court clerk at least six days prior to return date was substantive defect subjecting plaintiff's action to motion to dismiss).

Our Supreme Court in *Andover Ltd. Partnership I* v. *Board of Tax Review*, supra, 232 Conn. 397, reiterated the test for determining whether a defect is circumstantial under § 52-123. First, the court looked to whether the party intended to reference the proper party or whether it "had erroneously misdirected its action." Id. "Second, [the court] considered three factors to determine whether the error was a misnomer and therefore a circumstantial defect under § 52-123: (1) whether the proper defendant had actual notice of the institution of the action; (2) whether the proper defendant knew or should have known that [he] was the intended defendant in the action; and (3) whether the proper defendant was in any way misled to [his] prejudice." Id. Although *Andover Ltd. Partnership I* is a civil case, the language of § 52-123 itself does not limit the statute's applicability

to civil cases. The statute plainly states: "No . . . kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects . . . ." General Statutes § 52-123. That language is broad enough to include petitions for continued commitment to the jurisdiction of the board.

Here, the state intended to reference the acquittee with regard to the Weatherly case. It is not in dispute that as the acquittee's release date approached on docket number CR76-197288, which was the docket number assigned to the Weatherly case, the state *inadvertently* filed its petition under an incorrect docket number, CR74-175185, which was the docket number assigned to the Foote case. However, the stipulation of facts makes it crystal clear that it was the acquittee whom the state intended to reference. The caption title on the court's memorandum of decision dated December 23, 2003, represented the acquittee by his name, Gregory Gillespie, and the court found facts concerning the Weatherly murder case based on the stipulation entered into by the acquittee. Next, in applying the three factors set forth in *Andover Ltd. Partnership I* by our Supreme Court to determine whether the defect was circumstantial, we conclude that they are satisfied. The acquittee had actual knowledge of the institution of the action, knew that the murder case, not the assault case, was the subject matter of the action and was not in any way misled to his prejudice. First, it is clear that the acquittee had actual knowledge of the institution of the action because in response to the state's petition, he filed a motion to dismiss specifically mentioning the murder charge and arguing that the state's petition for recommitment was unconstitutional pursuant to § 17a-593 (c). Although the acquittee himself used the incorrect Foote case docket number in his caption to this motion, both he and the state understood what was

substantively before the court. Second, it is also clear that the acquittee knew that the murder case was the subject matter of the action because, on December 23, 2003, he entered into a stipulation of facts, which concerned facts of the Weatherly case and made no mention of the unrelated Foote case.[2] At a hearing on December 23, 2003, the acquittee and the state argued the merits of the Weatherly case. In its memorandum of decision filed May 21, 2004, the court stated: "The only viable file that was before the court on December 23, 2003 . . . was the file that charged murder, CR76-197288. . . . All comments of the parties at the hearing concerned only the subject matter of the murder charged file." It is clear from the stipulation of facts and the argument of the acquittee's counsel at the December 23, 2003 hearing that the acquittee knew not only that the state's petition referenced him, but also knew that it concerned the Weatherly case. We therefore determine that the acquittee was not misled and that there was no prejudice, and conclude that the three part test in *Andover Ltd. Partnership I* was satisfied.

Furthermore, our Supreme Court has held that the use of an incorrect docket number is a circumstantial

[2] In its memorandum of decision dated December 23, 2003, the court stated: "The state of Connecticut and Gregory Gillespie, acquittee, have entered into the following stipulation, and the court, accordingly, finds these facts:

"1. On October 23, 1978, the acquittee was found not guilty by reason of mental disease or defect for the crime of murder;

"2. The crime of murder, a violation of General Statutes § 53-54a, at the time of the offense, provided for a maximum penalty of twenty-five years incarceration;

"3. On January 25, 1979, the acquittee was sentenced in the Superior Court to a period of commitment not to exceed twenty-five years;

"4. The acquittee was placed under the jurisdiction of the Psychiatric Security Review Board (PSRB) effective July 1, 1985, by operation of law pursuant to General Statutes § 17a-602.

"5. The acquittee's current term of commitment under the PSRB expires on January 25, 2004."

defect. In *Plasil* v. *Tableman*, 223 Conn. 68, 612 A.2d 763 (1992), our Supreme Court reviewed whether a trial court had subject matter jurisdiction to grant prejudgment remedies in a case in which an incorrect docket number that referred to a previously dismissed case was used. The court held that "[t]he failure to collect an entry fee for the re-served complaint or to assign it a new docket number did not deprive the court of jurisdiction or presumptively prejudice the defendants. To strip the plaintiff of her prejudgment remedies would neither facilitate the business of the court nor advance justice, but rather would serve merely to exalt technicalities above substance." (Internal quotation marks omitted.) Id., 80.

Case law from other jurisdictions is in accord that the use of an erroneous docket number, including that of an expired case in a criminal matter, does not implicate subject matter jurisdiction. See *Tale* v. *Mitchell*, 1997 Ohio App. LEXIS 2821 (June 27, 1997) (use of incorrect docket number, which belonged to dismissed case against defendant, when sentencing defendant did not deprive court of subject matter jurisdiction); *Wilkins* v. *Powell*, 56 Va. Cir. 27, 2001 Va. Cir. LEXIS 439 (January 30, 2001) (defendant incorrectly sentenced under docket number of dismissed case due to typographical errors and court ordered those scrivener's errors corrected); *Johnson* v. *Ragsdale*, 158 S.W.3d 426 (Tenn. App. 2004) (subject matter jurisdiction existed in civil case where incorrect docket number used referencing dismissed case).

We conclude that the court properly decided that the use of an incorrect docket number in this case was a circumstantial defect that was curable pursuant to § 52-123, and properly granted the motion to open to correct the docket number to conform to the proper docket number of the Weatherly case.

After opening the judgment and correcting the docket number, however, the court then proceeded to reinstate its prior judgment dismissing the state's petition for continued commitment. It stated: "The state's motion to reopen judgment is granted. The orders of the court [issued] on December 23, 2003, stand—and said orders are applied to Docket No. CR76-197288—subject to the effect of the Supreme Court's ruling in *State* v. *Long*, [supra, 268 Conn. 508] . . . ." Thus, the order dated December 23, 2003, and filed January 6, 2004, dismissing the state's petition for continued commitment, in which the court held on the basis of its prior decision in *State* v. *Long*, supra, Superior Court, Docket No. 308773 that § 17a-593 (c) was unconstitutional, was again made an order of the court in docket number CR76-197288.[3] Therefore, we reverse the judgment dismissing the state's petition and remand the case for further proceedings because the Supreme Court's decision in *State* v. *Long*, supra, 268 Conn. 508, had determined that § 17a-593 (c) is not unconstitutional.

After the court rendered its decision dated December 23, 2003, the trial court's decision in *State* v. *Long* was reversed by our Supreme Court. See *State* v. *Long*, supra, 268 Conn. 508. General Statutes § 17a-593 (c)[4] permits a court to extend the commitment of an acquittee past his initial term of commitment if his discharge would constitute a danger to himself or oth-

---

[3] In using the phrase "subject to the effect of the Supreme Court's ruling in *State* v. *Long*," the court, as previously observed, was aware that our Supreme Court's decision in *State* v. *Long*, supra, 268 Conn. 508, was not final because there was a petition for certiorari pending before the United States Supreme Court, which was ultimately denied on November 1, 2004.

[4] General Statutes § 17a-593 (c) provides: "If reasonable cause exists to believe that the acquittee remains a person with psychiatric disabilities or mentally retarded to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others, the state's attorney, at least one hundred thirty-five days prior to such expiration, may petition the court for an order of continued commitment of the acquittee."

ers. The trial court in *State* v. *Long* concluded that "§ 17a-593 (c) violated the defendant's due process rights under article first, § 8, of the Connecticut constitution because the statute failed to provide an acquittee with mandatory periodic judicial review of confinement . . . violated the defendant's equal protection rights under the fourteenth amendment to the United States constitution because it treats acquittees, like the defendant, differently from convicted prisoners who subsequently are civilly committed to a mental hospital at some point after they have been incarcerated . . . [and] violated the defendant's equal protection rights under article first, § 20, of the Connecticut constitution. . . ." Id., 514.

In *State* v. *Long*, our Supreme Court held that the trial court improperly determined that § 17a-593 (c) violated the defendant's due process rights under the state constitution and his equal protection rights under the state and federal constitutions. In so holding, the court stated that "§ 17a-593 (c), as applied to the defendant, provided him with periodic judicial review sufficient to satisfy his state procedural due process rights." Id., 516. The court further reasoned that the statute does not affect a suspect class or implicate a fundamental right and there is a rational basis for the legislature's differential treatment of insanity acquittees and civilly committed inmates, who have a mandated right to judicial review of their commitment by a Probate Court at least once every two years, because "the board has general and specific familiarity with all acquittees beginning with their initial commitment and, therefore, is better equipped than courts to monitor their commitment." Id., 536. It further reasoned that because "the legislature could have determined that the likelihood of an erroneous commitment is reduced in the case of an acquittee because an acquittee initiates the commitment process

himself by pleading and proving the mental illness that led to his commission of a crime." Id., 536–37.

The judgment is affirmed only as to the finding of subject matter jurisdiction and in all other respects is reversed and the case is remanded for further proceedings consistent with *State* v. *Long*, supra, 268 Conn. 508.

In this opinion the other judges concurred.