******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANDRE JOHNSON *v.* COMMISSIONER
OF CORRECTION
(AC 35368)

Beach, Prescott and West, Js.

*Argued September 24—officially released December 2, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Natalie Olmstead*, assigned counsel, for the appel-

lant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and, on the brief, *David Clifton*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Andre Johnson, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly rejected his claims that (1) his trial counsel rendered ineffective assistance because he did not object to the state's prosecuting him on a charge upon which the state had entered a nolle prosequi[1] and not refiled, and (2) his appellate counsel rendered ineffective assistance because he did not raise the argument on appeal that the conviction stemmed from the unlawful prosecution of a case that had been nolled. We conclude that the petitioner's claim that he was prosecuted on a nolled charge is without merit, and that his trial and appellate counsel therefore did not render ineffective assistance by failing to challenge the prosecution and conviction on that ground. Accordingly, we affirm the judgment of the habeas court.

The following facts and procedural history are relevant to this appeal. The petitioner was charged in Docket No. CR-99-479443 (443) with assault in the first degree in connection with the shooting of another individual. Following the death of the victim, the state charged the petitioner with the offense of murder under a separate docket number, CR-99-479860 (860).[2] At a subsequent bond hearing for the petitioner, the prosecutor, the petitioner's attorney, William Dow, and the court discussed whether it was necessary for the state to continue prosecuting the petitioner under both docket numbers. That discussion proceeded as follows:

"The Court: May I see the file, please? There's two files sent in. Is this basically one—

"[The Prosecutor]: It is, Judge. What happened was, [the petitioner] was originally arrested on the charge of assault in the first degree, and subsequent to his initial arrest the victim in the original assault in the first degree matter died, so he was then charged with the crime of murder, and that was at his transfer today and today is his first appearance on that matter.

"The Court: Is the second file viable for any reason at this point?

"[The Prosecutor]: I don't see any reason why it would be at this point.

"The Court: Safe to say it should be dismissed in view of the current charges pending?

"[The Prosecutor]: I think it should be.

"[Attorney Dow]: No objection.

"The Court: All right. Just for the record, we're talking about the assault one file.

"[The Prosecutor]: Well, Judge, if I might just be heard

before Your Honor does dismiss that on the record. My understanding is that this [petitioner] originally gave a statement to the New Haven police in conjunction with that assault in the first degree file, and I believe there was also some evidence that was seized in connection with his arrest on assault [in the] first degree. I believe there was a gun and shell casings and ammunition.

"The Court: Basically, it's no different than filing a sub information charging murder.

"[The Prosecutor]: Right.

"The Court: Is your concern with a dismissal that ultimately materials will be destroyed?

"[The Prosecutor]: Or—that is part of it, yes, sir.

"The Court: Would you rather simply file a sub with one file?

"[The Prosecutor]: Yes, the state will do that.

"The Court: No action need be taken at this moment, then. You can do it either way if that's your concern, but it's my understanding, as far as bond, I should be considering one incident.

"[Attorney Dow]: One file. I think we both agree on that."

Almost two months later, the prosecutor, Attorney Dow, and the court again discussed the status of the charges pending against the petitioner. The colloquy between the parties and the court occurred as follows:

"The Court: . . . The other file—is there a second file?

"[The Prosecutor]: Judge, the—as you are aware, and it was alluded to by Mr. Dow in some of his questions, the [petitioner] was originally arrested on an assault in the first degree charge. What I have done with regard to that file, that docket, is, I filed a substituted information in that file charging him with murder in that file.

"The Court: All right. So, is there a second file for some reason?

"The Clerk: Yes, there is.

"The Court: All right, but basically we're talking about the one charge of murder.

"[The Prosecutor]: The one charge.

"The Court: And the other file, any charges contained in that file I assume are nolled?

"[The Prosecutor]: Yes.

"The Court: For administrative purposes.

"[The Prosecutor]: Yes. It makes no sense to have two docket numbers for one file. . . .

"The Clerk: Judge, for the record, could Mr. State's Attorney verify which docket number he will be uti-

lizing?

"[The Prosecutor]: The correct docket number is going to be the first docket number. That is [443]. The other file is [860], was just—was another file that was opened after the—[the victim] died, but there's no necessity to keep that open, so the state would nolle that file, and the original file will stand with the substituted information.

"The Clerk: And you'll be filing a substitute—

"[The Prosecutor]: It should already be in the file. It's probably—it was probably misplaced in the other docket number. There was a substituted information filed. Do you have that in the file?

"The Clerk: I do not.

"[The Prosecutor]: I'll double-check it. It will be filed.[3]

"The Court: All right. All right. Thank you, gentlemen.

"[Attorney Dow]: Thank you, Your Honor.

"[The Prosecutor]: Thank you, Judge." (Footnote added.)

The petitioner was ultimately acquitted of murder, but the jury found him guilty of the lesser included offense of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a and 53a-55 (a) (3).[4] The court imposed a total effective sentence of twenty years incarceration. The petitioner subsequently appealed from his conviction, which this court affirmed in *State* v. *Johnson*, 71 Conn. App. 272, 801 A.2d 890, cert. denied, 261 Conn. 939, 808 A.2d 1133 (2002), cert. denied, 537 U.S. 1207, 123 S. Ct. 1286, 154 L. Ed. 2d 1052 (2003).

Six years after his appeal, the petitioner discovered that several documents in his court file bore Docket No. 860. On the basis of that discovery, he concluded that he had been illegally prosecuted for the nolled murder charge filed in Docket No. 860, rather than the murder charge filed in Docket No. 443. He subsequently filed a petition for a writ of habeas corpus,[5] alleging that his trial counsel had provided him with ineffective assistance because he did not object to the petitioner's prosecution on a charge that the state had nolled. He further alleged that his appellate counsel had rendered ineffective assistance because he did not raise on appeal the petitioner's purportedly unlawful prosecution as a basis for setting aside the conviction.[6]

The habeas court denied the petition, concluding, first, that the petitioner had failed to prove that either of the two murder charges filed by the state had been nolled before the end of the petitioner's trial, and, second, that the petitioner could not have suffered any prejudice because any mistaken reference to Docket No. 860 on certain documents would have constituted a circumstantial defect that would not have deprived the

trial court of jurisdiction. The petitioner subsequently petitioned for certification to appeal from the habeas court's judgment, which the habeas court granted. This appeal followed. Additional facts will be set forth as necessary.

The petitioner claims on appeal that the habeas court improperly concluded that he had failed to prove that the murder charge filed in Docket No. 860 had been nolled by the state before the end of his trial. He also claims that because that charge had, in fact, been nolled by the state, the failure of his trial counsel and appellate counsel to challenge his prosecution and conviction on that ground constituted ineffective assistance of counsel.

We assume, without deciding, that the habeas court improperly concluded, on the basis of the record before it, that the state had not nolled the murder charge filed under Docket No. 860 prior to the end of the petitioner's trial. Nevertheless, for reasons we now discuss, we agree with the habeas court that the mistaken use of that docket number during and subsequent to the petitioner's trial constituted a nonjurisdictional, circumstantial defect. Consequently, the habeas court properly concluded that the petitioner suffered no prejudice because of his trial and appellate counsels' failure to challenge his prosecution and conviction on that basis.

We begin our analysis by setting forth the applicable standard of review. "A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . . To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance. . . . To satisfy the prejudice prong for ineffective assistance claims resulting from guilty verdicts, the petitioner must demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Blake* v. *Commissioner of Correction*, 150 Conn. App. 692, 697–98, 91 A.3d 535, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

"In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . A court's finding

of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support [the court's finding of fact] . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Person* v. *Commissioner of Correction*, 146 Conn. App. 477, 480, 78 A.3d 213, cert. denied, 310 Conn. 960, 82 A.3d 627 (2013).

The petitioner's argument that he was prosecuted for the murder charge previously nolled by the state in Docket No. 860 rests largely on the fact that several documents contained in the court file during the pendency of his prosecution were marked with that docket number. For instance, the habeas court found that the transcript from the first day of trial, the short form information, and the petitioner's mittimuses, were all labeled with Docket No. 860. It also appears that the judgment of conviction against the petitioner was entered under Docket No. 860, as the respondent, the Commissioner of Correction, has admitted the petitioner's allegation that he is "currently in the custody of [the] respondent pursuant to the judgment in [Docket No. 860]."

Neither party disputes, however, that the use of Docket No. 860 on these documents directly conflicts with the established procedural history of this case. In fact, both parties readily acknowledge that the prosecutor affirmed unequivocally on several occasions before the petitioner's trial that the state was prosecuting the petitioner under the substitute information charging him with murder in Docket No. 443, and that the murder charge filed in Docket No. 860 was nolled. In light of this uncontroverted evidence of the state's intent, and the parties' mutual understanding of it, we must conclude, as the habeas court did, that the references to Docket No. 860 on these documents during and after the petitioner's trial were mistaken. Consequently, we must determine whether those errors were of such a kind that the petitioner's trial and appellate counsel can be considered to have been ineffective for failing to recognize and raise them as a basis for challenging his prosecution and conviction.

"Defective pleadings are broken down into two categories: circumstantial defects, which are subject to correction under [General Statutes] § 52-123, and substantive defects, which are not. . . . Both our case law and our legislature have expressed clear policy reasons for eschewing dismissals on technical or circumstantial grounds. Section 52-123 provides: No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may

be rightly understood and intended by the court. Our Supreme Court has explained that . . . § 52-123 replaces the common law rule that deprived courts of subject matter jurisdiction whenever there was a misnomer . . . in an original writ, summons, or complaint. . . . When a misnomer does not result in prejudice to a party, the defect in the writ is circumstantial error." (Citation omitted; internal quotation marks omitted.) *Colon* v. *State*, 129 Conn. App. 59, 64, 19 A.3d 699 (2011).

"Our Supreme Court in *Andover Ltd. Partnership I* v. *Board of Tax Review*, [232 Conn. 392, 397, 655 A.2d 759 (1995)], reiterated the test for determining whether a defect is circumstantial under § 52-123. First, the court looked to whether the party intended to reference the proper party or whether it had erroneously misdirected its action. . . . Second, [the court] considered three factors to determine whether the error was a misnomer and therefore a circumstantial defect under § 52-123: (1) whether the proper defendant had actual notice of the institution of the action; (2) whether the proper defendant knew or should have known that [he] was the intended defendant in the action; and (3) whether the proper defendant was in any way misled to [his] prejudice. . . . Although *Andover Ltd. Partnership I* is a civil case, the language of § 52-123 itself does not limit the statute's applicability to civil cases." (Citations omitted; internal quotation marks omitted.) *State* v. *Gillespie*, 92 Conn. App. 143, 150–51, 884 A.2d 419 (2005).

Applying the test set forth in *Andover Ltd. Partnership I* to the facts of the present case, we conclude that any reference to Docket No. 860 during the petitioner's trial was a nonjurisdictional, circumstantial defect. There is no dispute that the state both intended to and consistently did reference the proper party in prosecuting the petitioner for the victim's death. Nor is it disputed that the petitioner, who appeared at trial, and was represented by counsel throughout, had actual notice of the state's charges against him. Moreover, the record establishes that the petitioner knew at all times that he was the intended defendant. And because the factual basis underlying each of the two murder charges was identical, the petitioner cannot reasonably claim that he was misled to his prejudice.

Our conclusion accords with our case law, which has consistently held that the use of an incorrect docket number is a circumstantial defect. See, e.g., *Plasil* v. *Tableman*, 223 Conn. 68, 77, 612 A.2d 763 (1992) (use of original docket number in re-served process did not create jurisdictional defect because "the trial court could have ordered the clerk to assign a new docket number to the re-served process"); *Harris* v. *Commissioner of Correction*, 107 Conn. App. 833, 843–44, 947 A.2d 7 (use of incorrect docket number during sentencing was not substantive defect), cert. denied, 288 Conn.

908, 953 A.2d 652 (2008); *First Federal Savings & Loan Assn. of Rochester* v. *Pellechia*, 31 Conn. App. 260, 266, 624 A.2d 395 ("[t]he scrivener's error or misstatement of a single digit of the docket number in this case was a circumstantial defect and does not abate the plaintiff's claim"), cert. denied, 227 Conn. 923, 632 A.2d 701 (1993). In one case, *State* v. *Gillespie*, supra, 92 Conn. App. 148–53, we held that the trial court maintained subject matter jurisdiction over the recommitment proceedings of an acquittee even though those proceedings were conducted under the docket number of an expired case. Because we find *Gillespie* particularly instructive, if not controlling, in resolving the petitioner's claims, we review the facts and analysis underlying its holding.

In that case, Gregory Gillespie was charged with assault in the first degree in connection with the shooting of another individual (assault case). Id., 145. He was subsequently acquitted of that charge by reason of mental disease or defect, and committed to the custody of the Psychiatric Security Review Board. Id. While on conditional release from that commitment, he was charged with murder after fatally shooting a former girlfriend (murder case). Id. He was acquitted of that charge by reason of mental disease or defect, and committed in that murder case to the custody of the Psychiatric Security Review Board for twenty-five years under General Statutes § 17a-602. Id.

Shortly before Gillespie's term of commitment in the murder case expired, the state filed a petition for recommitment under General Statutes § 17a-593. Id. The state filed that petition under the docket number of the assault case, however, and neither the state nor Gillespie brought the error to the court's attention at the time. Id.

Gillespie moved to dismiss the state's petition on constitutional grounds. Id., 146. The court granted his motion, but stayed its ruling. Id. While the case was on appeal, the state moved to open the court's judgment of dismissal in order to correct the incorrect docket number. Id. Gillespie again moved to dismiss the state's petition, this time arguing that the state's use of the docket number from the expired assault case deprived the court of subject matter jurisdiction. Id. The trial court granted the state's motion to open its prior judgment to correct the docket number, and Gillespie appealed. Id.

On appeal to this court, we held that the use of the docket number from the assault case during Gillespie's recommitment proceedings constituted a circumstantial defect under § 52-123 and did not deprive the trial court of jurisdiction. In reaching that conclusion, we observed that "the state intended to reference the acquittee with regard to the [murder] case. It is not in dispute that as the acquittee's release date approached . . . the state *inadvertently* filed its petition under . . .

the docket number assigned to the [assault] case. However, the stipulation of facts makes it crystal clear that it was the acquittee whom the state intended to reference. The caption title on the court's memorandum of decision . . . represented the acquittee by his name, Gregory Gillespie, and the court found facts concerning the . . . murder case based on the stipulation entered into by the acquittee. Next, in applying the three factors set forth in *Andover Ltd. Partnership I* by our Supreme Court to determine whether the defect was circumstantial, we conclude that they are satisfied. The acquittee had actual knowledge of the institution of the action, knew that the murder case, not the assault case, was the subject matter of the action and was not in any way misled to his prejudice. First, it is clear that the acquittee had actual knowledge of the institution of the action because in response to the state's petition, he filed a motion to dismiss specifically mentioning the murder charge and arguing that the state's petition for recommitment was unconstitutional pursuant to § 17a-593 (c). Although the acquittee himself used the incorrect [assault] case docket number in his caption to this motion, both he and the state understood what was substantively before the court. Second, it is also clear that the acquittee knew that the murder case was the subject matter of the action because . . . he entered into a stipulation of facts, which concerned facts of the [murder] case and made no mention of the unrelated [assault] case. At a hearing . . . the acquittee and the state argued the merits of the [murder] case. In its memorandum of decision . . . the court stated: The only viable file that was before the court . . . was the file that charged murder . . . . All comments of the parties at the hearing concerned only the subject matter of the murder charged file. It is clear from the stipulation of facts and the argument of the acquittee's counsel . . . that the acquittee knew not only that the state's petition referenced him, but also knew that it concerned the [murder] case. We therefore determine that the acquittee was not misled and that there was no prejudice, and conclude that the three part test in *Andover Ltd. Partnership I* was satisfied." (Emphasis in original; footnote omitted; internal quotation marks omitted.) Id., 151–52.

Like the use of a docket number from an "expired" case in *Gillespie*, the present case involves the *inadvertent* use of an incorrect docket number from a file that is no longer active because the charges have been nolled. Moreover, the petitioner here, like the acquittee in *Gillespie*, was plainly informed as to which of the two files on which the state was proceeding to trial. Both informations charged the petitioner with the *same offense* based on the *same facts*, and he and the state thus clearly "understood what was substantively before the court"; id.; as the acquittee in *Gillespie* did. We therefore conclude, as we did in *Gillespie*, that the use

of the wrong docket number on some documents was inadvertent and nonprejudicial, and constituted a circumstantial defect under § 52-123.

The petitioner attempts to distinguish the present case from *Gillespie* by arguing that the acquittee in *Gillespie* was not "held" on an incorrect docket number, and that "[i]n this case, the petitioner is *confined* based on a docket that was nolled by the state." (Emphasis in original.) He fails to explain why this distinction is meaningful to our analysis, however, and we can discern no basis as to why a circumstantial defect would become a substantive defect simply because he was subsequently incarcerated. Regardless of which docket number is referenced on documents relating to his incarceration, the petitioner was tried, convicted, and sentenced as a result of his prosecution under Docket No. 443. The use of Docket No. 860 was a circumstantial defect, and, therefore, the proper remedy is not to vacate the underlying conviction, but to correct the records so that they properly reflect the correct docket number. See *State* v. *Gillespie*, supra, 92 Conn. App. 153 ("[because] the use of an incorrect docket number in this case was a circumstantial defect that was curable pursuant to § 52-123, [the court] properly granted the motion to open to correct the docket number to conform to the proper docket number"); see also *Plasil* v. *Tableman*, supra, 223 Conn. 76–77 ("even if the assignment of a new docket number were necessary for the orderly maintenance of the trial court's computer files, as urged by the defendants, the plaintiff correctly observes that the administrative defect in this case could have been cured without dissolving the prejudgment remedies").[7]

Because any reference to Docket No. 860 during and after the petitioner's trial qualified as a circumstantial defect under § 52-123, any attempt to challenge his prosecution and subsequent conviction on that ground would have inevitably failed. Thus, the petitioner's trial and appellate counsel were not ineffective for failing to raise that issue during his trial or on appeal, and the habeas court properly determined that the petitioner could not prevail on his sixth amendment claim under the framework set forth in *Strickland* v. *Washington*, supra, 466 U.S. 687.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "The state's right to terminate a prosecution by the entry of a nolle prosequi has its origins in practices recognized at common law. The effect of a nolle prosequi is to end pending proceedings without an acquittal and without placing the defendant in jeopardy." *State* v. *Lloyd*, 185 Conn. 199, 201, 440 A.2d 867 (1981).

[2] The state also alleged, in a part B information, that the petitioner had committed a class A, B or C felony with a firearm in violation of General Statutes § 53-202k.

[3] The habeas court found that "[t]he long form information charging the petitioner with murder does not contain a docket number, but it is dated June 30, 1999, which is consistent with [the prosecutor's] testimony at the

habeas trial that he filed a substituted information in the first file, [Docket No. 443], shortly before the probable cause hearing held on July 8, 1999."

[4] With respect to the part B information, the petitioner waived his right to have the jury determine whether he committed a class A, B or C felony with a firearm in violation of General Statutes § 53-202k. See footnote 2 of this opinion. The trial court, *Thompson, J.*, subsequently found that he did.

[5] The petitioner filed his initial petition on August 26, 2010. He subsequently filed an amended petition on February 16, 2012.

[6] In the same petition, he also raised the claim that he had been deprived of his right to a fair trial as a result of prosecutorial impropriety, but subsequently withdrew that claim during his habeas trial.

[7] The petitioner also urges us to adopt the bright line rule set forth by the Supreme Court of South Carolina in *Mackey* v. *State*, 357 S.C. 666, 669, 595 S.E.2d 241 (2004), that a prosecution that is based on a nolled charge must be dismissed if the defendant has not otherwise been reindicted.

In *Mackey*, the petitioner was indicted for grand larceny, resisting arrest, and first degree burglary. Id., 667. The prosecutor subsequently nolled those indictments, and never reindicted the petitioner. Id. Nevertheless, the petitioner was tried and convicted of those charges, and thereafter filed a petition for postconviction relief. Id. The Supreme Court of South Carolina concluded that the nolle effectively extinguished the state's prosecution of the petitioner on those charges, and the state was therefore required to reindict the petitioner if it intended to try him. Id., 668–69. Because the petitioner was not reindicted, however, the court vacated his conviction. Id., 669.

Unlike the petitioner in *Mackey*, the petitioner in the present case was effectively "reindicted" by way of the substitute information filed in Docket No. 443, which remained active throughout the petitioner's trial. Thus, a charge of murder was pending against the petitioner at all pertinent times, and the holding of *Mackey* would not benefit the petitioner, even if we were to adopt it.

---