******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

GLORIA DRUMMER *v.* STATE OF
CONNECTICUT ET AL.
(AC 47461)

Elgo, Moll and Flynn, Js.

*Syllabus*

The plaintiff, who had been involuntarily civilly committed to a psychiatric hospital pursuant to statute (§ 17a-498), appealed from the trial court's judgment for the defendants in her action seeking declaratory and injunctive relief in connection with her continued confinement. She claimed, inter alia, that the court improperly granted the defendants' motion for summary judgment. *Held*:

This court, having concluded that the plaintiff did not have a specific personal and legal interest that had been specially and injuriously affected in order to have standing to assert her claims for declaratory and injunctive relief, reversed the trial court's judgment and remanded the case with direction to dismiss the action.

This court, having concluded that the plaintiff lacked individual standing to raise her claims in the underlying action, determined that she also lacked the requisite typicality to raise those same claims on behalf of a class as required by the rule of practice (§ 9-7) for class certification.

Argued March 10—officially released July 1, 2025

*Procedural History*

Action seeking, inter alia, permanent injunctive relief regarding the obligation of the state to conduct certain periodic reviews of individuals who have been involuntarily civilly committed, and other relief, brought to the Superior Court in the judicial district of Middlesex, where the court, *Hon. Edward S. Domnarski*, judge trial referee, denied the plaintiff's motion for class certification; thereafter, the court, *Hon. Edward S. Domnarski*, judge trial referee, denied the plaintiff's motion for summary judgment, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed only as to form of judgment*; *judgment directed.*

*Kirk W. Lowry*, with whom were *Kathleen Flaherty* and *Karyl Lee Hall*, for the appellant (plaintiff).

*Shawn L. Rutchick*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Michael K. Skold*, deputy solicitor general, for the appellees (defendants).

*Opinion*

FLYNN, J. In this action for a declaratory judgment and injunctive relief, the plaintiff, Gloria Drummer, appeals from the judgment of the trial court denying her motion for summary judgment and granting the motion for summary judgment filed by the defendants, the state of Connecticut, the Department of Mental Health and Addiction Services, Connecticut Valley Hospital, Whiting Forensic Hospital, Greater Bridgeport Community Mental Health Center, Connecticut Mental Health Center, and Capital Region Mental Health Center. On appeal, the plaintiff claims that the court improperly (1) rendered summary judgment in favor of the defendants and (2) denied her motion for class certification. We do not reach the merits of these claims because, for reasons that follow, we conclude that the plaintiff lacked the requisite standing to assert her claims before the trial court. Accordingly, we reverse the judgment of the trial court only as to the form of the judgment and remand the case with direction to dismiss the action.

At the outset, we provide a brief overview of the statutory scheme governing civil commitment, which is set forth in General Statutes § 17a-495 et seq. Applications for civil commitment may be filed with the probate court for the district in which the potential committee resides. See General Statutes § 17a-497 (a); see also *State* v. *Long*, 268 Conn. 508, 529, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340

(2004). After civil commitment proceedings are commenced, the individual who is the subject of the proceedings has a right to a hearing before the probate court. See General Statutes § 17a-498 (a). "If the court finds by clear and convincing evidence that the respondent has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, the court shall make an order for his or her commitment, considering whether or not a less restrictive placement is available, to a hospital for psychiatric disabilities to be named in such order, there to be confined for the period of the duration of such psychiatric disabilities or until he or she is discharged or converted to voluntary status pursuant to section 17a-506 in due course of law. . . ." General Statutes § 17a-498 (c) (3).

Section 17a-498 (g) requires periodic review for patients who have been civilly committed. Specifically, § 17a-498 (g) provides in relevant part that "[t]he hospital shall notify each patient at least annually that such patient has a right to a further hearing pursuant to this section. . . . If the patient's last annual review did not result in a hearing, and in any event at least every two years, the Probate Court shall, within fifteen business days, proceed with a hearing in the manner provided in subsections (a), (b), (c) and (f) of this section. . . ." The review process set forth in § 17a-498 (g) addresses the concerns articulated by our Supreme Court in *Fasulo* v. *Arafeh*, 173 Conn. 473, 378 A.2d 553 (1977). In *Fasulo*, our Supreme Court considered the procedural due process claims of two individuals committed indefinitely to a state hospital and who had been confined, respectively, for periods of twenty-six years and thirteen years. Id., 477. The court held that the due process clause in article first, § 8, of the Connecticut constitution "mandates that involuntarily confined civilly committed individuals be granted periodic judicial

reviews of the propriety of their continued confinement" and that the state must bear the burden of proof with respect to the necessity of recommitment under our constitution.[1] Id., 479–81.

In the present case, the trial court set out the following relevant undisputed facts in its memorandum of decision. The plaintiff was involuntarily civilly committed to Connecticut Valley Hospital by the Middletown Probate Court on October 14, 2016.[2] The medical team at Connecticut Valley Hospital deemed her clinically "discharge ready" on August 2, 2017. See footnote 11 of this opinion. Less than two months later, on September 26, 2017, the plaintiff's social worker was informed by staff at Capital Region Mental Health Center that

---

[1] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

*Fasulo* held that "[t]here can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the [s]tate cannot accomplish without due process of law." (Internal quotation marks omitted.) *Fasulo* v. *Arafeh*, supra, 173 Conn. 476. "Once the purpose of the commitment no longer exists, there is no constitutional basis for the state to continue to deprive the individual of his liberty. . . . To satisfy due process, the procedure for releasing a civilly committed patient must be adequate to assure release of those who may no longer constitutionally be confined." (Citation omitted.) Id., 476–77.

In *State* v. *Long*, supra, 268 Conn. 508, our Supreme Court explained that the "[d]ue process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures." (Internal quotation marks omitted.) Id., 524; see also *Fasulo* v. *Arafeh*, supra, 173 Conn. 477 ("the thoroughness of the procedure by which [a] deprivation is effected must be balanced against the gravity of the potential loss and the interests at stake" (internal quotation marks omitted)). The court also explained that "a validly enacted statute carries with it a strong presumption of constitutionality, [and] . . . those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Long*, supra, 521.

[2] The plaintiff was civilly committed pursuant to § 17a-498 (c) after she was found not competent to stand trial and not restorable for certain criminal charges in the Superior Court.

staff had not yet discussed an alternative placement for the plaintiff if she were to be discharged. On October 13, 2017, less than three weeks later, the Middletown Probate Court conducted an annual commitment review hearing of the plaintiff's case, issued an order that the plaintiff still met the standard for civil commitment, and continued the hearing until February 2, 2018. On November 21, 2017, approximately five weeks after the Probate Court's continuance order, the plaintiff's social worker wrote in her chart that Capital Region Mental Health Center staff had indicated that there was no appropriate residential placement available in the community at that time to meet the plaintiff's continuing clinical needs.[3]

On or about January 25, 2018, the plaintiff commenced this action by serving a summons and complaint on the Attorney General. In her complaint, the plaintiff alleged, inter alia, that she had not been given a periodic review required by *Fasulo* v. *Arafeh*, supra, 173 Conn. 473, she no longer met commitment standards, and she was unnecessarily institutionalized in a state operated inpatient psychiatric facility because of a lack of community supports and services, including supportive housing.

In her complaint, the plaintiff sought declaratory and injunctive relief. Specifically, the plaintiff requested, inter alia, that the court: (1) enter a declaratory judgment that the periodic review provided by § 17a-498 (g), which mandates review of a patient's commitment at least every two years, violates the Connecticut constitution because it does "not meet the minimum due

---

[3] As set forth previously in this opinion, § 17a-498 (c) (3) requires the probate court to consider whether or not a less restrictive placement is available. Pursuant to § 17a-498 (c) (1), the court shall require certificates from at least two physicians that include, inter alia, information about "whether or not less restrictive placement is recommended and available and whether or not the respondent is incapable of understanding the need to accept the recommended treatment on a voluntary basis."

process requirements laid out in *Fasulo*"; (2) "[e]nter a declaratory judgment that the state's failure to establish and maintain a mental health system that provides adequate community supports and services so that patients in state operated inpatient psychiatric facilities may be discharged within a reasonable time of no longer meeting commitment standards violates the Connecticut Patients' Bill of Rights";[4] (3) "[o]rder that the defendants discharge [the plaintiff] to the most integrated setting, presuming that supportive housing is the most integrated setting, and provide adequate supports and services to [the plaintiff] in her supportive housing"; and (4) enter permanent injunctive relief ordering the state to provide periodic review of patients who are involuntarily civilly committed in a manner that includes, inter alia,[5] that "[a]t each monthly treatment

[4] The Connecticut Patients' Bill of Rights provides in relevant part that "[n]o patient hospitalized or treated in any public or private facility for the treatment of persons with psychiatric disabilities shall be deprived of any personal, property or civil rights, including the right to vote, hold or convey property, and enter into contracts, except in accordance with due process of law, and unless such patient has been declared incapable pursuant to sections 45a-644 to 45a-662, inclusive. Any finding of incapability shall specifically state which civil or personal rights the patient is incapable of exercising"; General Statutes § 17a-541; and "[e]very patient treated in any facility for treatment of persons with psychiatric disabilities shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy. Each patient shall be treated in accordance with a specialized treatment plan suited to his disorder. Such treatment plan shall include a discharge plan which shall include, but not be limited to, (1) reasonable notice to the patient of his impending discharge, (2) active participation by the patient in planning for his discharge and (3) planning for appropriate aftercare to the patient upon his discharge." General Statutes § 17a-542.

[5] Specifically, with respect to the plaintiff's request for injunctive relief, the plaintiff requested that the court "[e]nter permanent injunctive relief ordering the state to provide periodic review of patients who are involuntarily civilly committed as follows:

"A. At each involuntary civil commitment hearing, the treating psychiatrist will testify within a reasonable degree of medical certainty when it is likely that the patient will stabilize and no longer be a danger to self or others or gravely disabled or be able to receive community supports and services in a less restrictive setting.

team meeting, the attending psychiatrist will assess the present mental status of the patient and determine within a reasonable degree of medical certainty whether the patient no longer meets commitment standards. If the patient likely does not meet commitment standards, the unit director or social worker shall immediately request a periodic review of the patient's commitment with the probate court having jurisdiction of the matter"; that "[t]he state shall establish and maintain a mental health system that has the capacity at all levels of care"; and that the state "enact laws that authorize the probate court to order discharge to the most integrated setting . . . ."

"B. At each monthly treatment team meeting, the attending psychiatrist will assess the present mental status of the patient and determine within a reasonable degree of medical certainty whether the patient no longer meets commitment standards. If the patient likely does not meet commitment standards, the unit director or social worker shall immediately request a periodic review of the patient's commitment with the probate court having jurisdiction of the matter.

"C. The treatment team shall designate and document in the patient's chart that each patient is ready for discharge as soon as the patient is likely to no longer be a danger to self or others or gravely disabled or is able adequately to receive services in a less restrictive setting. The fact that the state does not have a less restrictive setting readily available shall not be a factor in the determination of whether the patient meets commitment standards.

"D. The state and the treatment team shall presume that supportive housing, community housing with services wrapped around the individual based on the individual's preferences and needs, is the most integrated setting. The team may rebut the presumption of supportive housing only with documented facts and evidence based evaluations and tests.

"E. As soon as a patient is declared ready for discharge, the state and the facility shall discharge the patient to the most integrated setting within a reasonable period of time. The state shall establish and maintain a mental health system that has the capacity at all levels of care, with a priority for supportive housing, so that institutionalized patients in state operated psychiatric facilities may be discharged within a reasonable period of time.

"F. The state shall enact laws that authorize the probate court to order discharge to the most integrated setting, subject to contempt proceedings, if patients are not discharged within a reasonable period of time.

"G. Appoint a court monitor, paid for by the defendant, to ensure that the state is in compliance with this court's orders for injunctive relief."

At a February 2, 2018 probate hearing, shortly after the present action was commenced, representatives of the Department of Mental Health and Addiction Services, Connecticut Valley Hospital, and Capital Region Mental Health Center informed the Middletown Probate Court that the plaintiff could be accommodated at Lotus Home, a residential living facility, and could be released there on March 14, 2018. The Middletown Probate Court continued the hearing until March 14, 2018, and, on that date, the plaintiff was discharged and released to the Lotus Home facility.[6]

In May, 2018, on the basis of the plaintiff's release to the Lotus Home facility, the defendants filed a motion to dismiss the plaintiff's action in the Superior Court. They argued that, because the plaintiff was no longer civilly committed, her claims were moot and the court, as a result, lacked subject matter jurisdiction over her complaint.

In June, 2018, the plaintiff filed a motion for class certification. The plaintiff moved to certify two proposed classes, consisting of (1) "[a]ll psychiatric inpatients involuntarily civilly committed to a state operated psychiatric facility who are likely to not meet commitment standards before their annual or biennial review and who have not had a probate court periodic review requested by the facility" (periodic commitment review class), and (2) "[a]ll psychiatric inpatients involuntarily civilly committed to a state operated psychiatric facility who have been declared discharge ready by their treatment teams or not meeting commitment standards by

---

[6] The record reflects that the Lotus Home facility is an "intensive program" funded by the Department of Mental Health and Addiction Services for "challenging, high-risk female clients that require on-site, 24 hours a day, 7 days a week (24/7), supervision." The plaintiff was at the Lotus Home facility for more than two years, until June, 2020, when she was discharged to state funded senior housing, where she continues to receive daily residential care and outpatient care.

the probate court but who remain in the facility unnecessarily institutionalized and segregated for an unreasonable period of time because of a lack of appropriate placements, supports and services in the community" (less restrictive setting class). The defendants filed an objection to the plaintiff's motion, arguing that the plaintiff failed to satisfy the requirements for class certification set forth in Practice Book §§ 9-7 and 9-8, including the requirements for typicality and numerosity set forth in § 9-7.

On July 12, 2019, the court, *Frechette, J.*, issued a memorandum of decision denying the defendants' motion to dismiss and denying the plaintiff's motion for class certification. With respect to the defendants' motion to dismiss, the court determined that the plaintiff's claims fell within the exception to the mootness doctrine for issues capable of repetition, yet evading review.

With respect to the plaintiff's motion for class certification, the court concluded that the plaintiff failed to satisfy certain requirements set forth in Practice Book §§ 9-7 and 9-8.[7] Specifically, the court determined that the plaintiff failed to satisfy the numerosity requirement set forth in § 9-7, and, even assuming arguendo that the plaintiff met the requirements of § 9-7, the plaintiff

[7] Practice Book § 9-7 provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Practice Book § 9-8 provides in relevant part: "An action may be maintained as a class action if the prerequisites of Section 9-7 are satisfied, and in addition . . . (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

failed to establish that the defendants "acted or refused to act on grounds generally applicable to the class[es]," as required by § 9-8 (2).

On February 1, 2023, the plaintiff again filed a motion for class certification. The plaintiff moved to certify the same two classes previously proposed, specifically, the periodic commitment review class and the less restrictive setting class. The defendants filed an objection to the plaintiff's motion.

The court, *Hon. Edward S. Domnarski*, judge trial referee, denied the plaintiff's motion for class certification on July 5, 2023. The court determined that the plaintiff failed to satisfy the numerosity requirement for the same reasons that Judge Frechette denied the initial motion and that the plaintiff also failed to satisfy the typicality and commonality requirements set forth in Practice Book § 9-7.

On August 21, 2023, the parties filed motions for summary judgment. The plaintiff claimed that she was entitled to judgment as a matter of law on her requests for declaratory and injunctive relief. In their motion and accompanying memorandum, the defendants maintained that the plaintiff's claims were moot on the basis that she was clinically discharged to the Lotus Home facility, and, in the alternative, they argued that the plaintiff's claims failed on their merits, as a matter of law. The parties filed objections to each other's respective motions and submitted documentary evidence in support thereof.

On February 28, 2024, the court, *Hon. Edward S. Domnarski*, judge trial referee, issued a memorandum of decision denying the plaintiff's motion for summary judgment and granting the defendants' motion for summary judgment. The court first dealt with the defendants' argument that the plaintiff's claims were moot because

she had already been discharged from Connecticut Valley Hospital. The court rejected that argument because it largely adopted the reasoning of Judge Frechette, who had previously held that, because, inter alia, given the plaintiff's lengthy psychiatric history, the same factual scenario of which she complains could likely arise again, and, therefore, the plaintiff's claims qualified for review under the capable of repetition, yet evading review exception and met the requirements set forth by our Supreme Court in *Loisel* v. *Rowe*, 233 Conn. 370, 382, 660 A.2d 323 (1995).[8]

The court proceeded to review the plaintiff's claims to determine whether the plaintiff or the defendants were entitled to judgment as a matter of law. As an initial matter, the court noted that, in the plaintiff's objection to the defendants' motion for summary judgment, she abandoned her claims pertaining to the Connecticut Patients' Bill of Rights. The court, therefore, considered them withdrawn and concluded that the plaintiff limited her claim to substantive due process arguments afforded by article first, § 8, of the Connecticut constitution and the statutory authority of the probate courts of Connecticut to order timely discharge of patients to less restrictive settings.

The court further concluded that the plaintiff failed to establish that § 17-498 (g) violates the due process

---

[8] "Our cases reveal that for an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance." *Loisel* v. *Rowe*, supra, 233 Conn. 382.

clause of the Connecticut constitution and failed to demonstrate that she was entitled to the injunctive relief she requested. Specifically, the court concluded that § 17-498 (g)'s requirement that the state initiate a recommitment hearing at least every two years complies with due process and our Supreme Court's decision in *Fasulo*. The court also concluded that the plaintiff's request for the court to enter an order to ensure that a less restrictive placement is always available is an "enormous and consequential request for which the plaintiff has provided no authority" and there was nothing in the holding of *Fasulo* that mandated a discharge to "a less restrictive placement." As a result, the court determined that the defendants were entitled to judgment as a matter of law. This appeal followed.

I

The plaintiff first claims that the court improperly rendered summary judgment in favor of the defendants because (1) it erred in concluding that the two year review process set forth in § 17a-498 (g) does not violate the due process clause of article first, § 8, of the Connecticut constitution, and (2) it erred in concluding that *Fasulo* does not provide the probate court with the authority to discharge a patient "who no longer meets the legal standard for commitment" to a less restrictive setting.[9] The defendants argue that the court's decision

___

[9] The plaintiff also claims, in a footnote, that the trial court erred in finding that she withdrew her claims under the Connecticut Patients' Bill of Rights. Our review of the plaintiff's objection to the defendants' motion for summary judgment reflects that the plaintiff made conflicting statements about whether she was withdrawing her claims. She first stated that "the plaintiff's arguments regarding whether the Patients' Bill of Rights incorporates a right to discharge to the most integrated setting have been withdrawn" but then stated that "the plaintiff's claims regarding discharge to a less restrictive setting are now only claims based on the due process clause of the Connecticut constitution, article first, § 8, *Fasulo* . . . and the plain language of [General Statutes] § 17a-541, civil rights, and [General Statutes] § 17a-542, right to a discharge plan." Sections 17a-541 and 17a-542 fall within the Connecticut Patients' Bill of Rights. Regardless of whether the plaintiff withdrew those claims, however, the plaintiff's related prayers for relief in

was proper and, additionally, they raise the threshold issue that the trial court lacked jurisdiction to consider the plaintiff's claim concerning the probate court's authority to compel placement to a less restrictive setting because the plaintiff lacked standing to assert that claim. Specifically, the defendants argue that, because that claim relates to patients who "no longer [meet] the legal standard for commitment," and the plaintiff herself continued to meet the standard for civil commitment, "she is not among the class of individuals impacted by this hypothetical question and lacks standing to pursue it." The defendants similarly argue that the plaintiff's due process claim was based on the flawed premise that she no longer met the standard for civil commitment once she was designated "discharge ready" by her treatment team. We agree with the defendants and, accordingly, we conclude that the plaintiff lacked standing to assert her claims.

Where lack of jurisdiction is raised, we must first address it. See *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 816, 12 A.3d 852 (2011) ("Once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.)); see also *PHH Mortgage Corp.* v. *Cameron*, 130 Conn. App. 238, 241, 22 A.3d 1282 (2011).

"The issue of standing implicates this court's subject matter jurisdiction. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully

her complaint relate to the discharge of patients "within a reasonable time of *no longer meeting commitment standards*"; (emphasis added); and, accordingly, the plaintiff lacked standing to pursue such claims for the reasons set forth subsequently in this opinion. As we note, the plaintiff was adjudicated to have met the statutory civil commitment standards until a less restrictive placement was available, and her hearing before the probate court took place only two months after she was declared discharge ready.

invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) *State* v. *Long*, supra, 268 Conn. 531–32.

The defendants contend that this issue presents questions of law over which this court should exercise plenary review, citing *Winakor* v. *Savalle*, 343 Conn. 773, 781, 276 A.3d 407 (2022). We agree that our review is plenary. "Because standing implicates subject matter jurisdiction . . . and thus raises a question of law, our review is plenary." (Citation omitted; internal quotation marks omitted.) *Wisniewski* v. *Palermino*, 351 Conn. 390, 399, 330 A.3d 857 (2025).

The defendants argue that the plaintiff seeks "an abstract declaration that probate courts 'have authority

to order the discharge of a patient *who no longer meets the legal standard for commitment to a less restrictive setting.*' " (Emphasis altered.) The defendants further contend that the Middletown Probate Court held that the plaintiff continued to meet that standard for continued civil commitment set forth in § 17a-498 (g) by having "psychiatric disabilities" and being "gravely disabled" but that the plaintiff chose not to appeal the rulings of the Middletown Probate Court. They argue that the plaintiff is not among the class of individuals impacted by this "hypothetical question" and, therefore, that she lacks standing to pursue it.

To this argument, the plaintiff responds that she did not appeal from the Middletown Probate Court's orders because she was aggrieved by being unnecessarily institutionalized due to the conduct of the defendants, not the conduct or rulings of the Probate Court, and that she did not appeal from the Probate Court's rulings because "an appeal would do no good without a place to discharge to" and she did not seek a discharge to homelessness. She further contends that her aggrievement "was the defendants' violation of her constitutional and statutory rights under the due process clause and the Connecticut Patients' Bill of Rights to liberty and to not be unnecessarily institutionalized due to a failure to timely provide community residential services and support" and "the [trial] court's repeated findings of standing should be upheld."[10]

In his oral argument before this court, appellate counsel for the plaintiff stated: "The problem [the plaintiff] seeks to address is that civilly committed patients are held in state psychiatric hospitals after they are

---

[10] We note that, although the trial court addressed the issue of whether the plaintiff's claims were moot as a result of her release to the Lotus Home facility, it did not consider whether the plaintiff lacked standing as a result of the Probate Court's finding that she continued to meet the standard for civil commitment.

declared to be ready for discharge by the treatment team and they're held there unnecessarily both because they are not given a timely probate court due process hearing and because there are insufficient community mental health resources for them to be discharged to."

We note the following relevant facts from the record. The plaintiff was declared "discharge ready"[11] by her treatment team on August 2, 2017. Just two months later, on October 13, 2017, the Probate Court promptly held a state initiated annual commitment review hearing, although none was required by law until two years after the plaintiff's initial commitment.[12] Two orders entered regarding the plaintiff's continued hospitalization, on October 13, 2017, finding that the plaintiff continued to meet the standard for civil commitment, and, on February 2, 2018, continuing the plaintiff's commitment until a less restrictive placement was available.

---

[11] In support of their motion for summary judgment, the defendants submitted deposition testimony from Charles Dike, the medical director for the Department of Mental Health and Addiction Services. In explaining what "discharge ready" means, he stated: "There are people, for example, who might still have risks attached to them, but the risks are manageable risks. . . . We are not discharging them completely . . . . We still worry that something bad might happen in those risks, but we still discharge them if we think that that's what they need. . . . [I]t's not straightforward. The case for which we are here today is a prime example of that. It's not a casual, you are ready to move. The history of significant violence and the consequences of that cannot be ignored or pushed under the rug. So the question will become while you are in the hospital, you might look like you're fine, but unless and until we're able to figure out what additional resources you're going to need in order to be fine in the community, the answer is not straightforward, because, as I said, there are people who might need a highly restrictive stay in the community."

[12] The plaintiff's initial commitment hearing was held on October 14, 2016. Pursuant to § 17a-498 (g), the probate court must hold a review at least every two years, and each patient has a right to an annual hearing upon her request.

At oral argument before this court, the plaintiff's counsel acknowledged that a review hearing could have been held even sooner if the hospital had requested one, because "[u]sually hearings get scheduled within two weeks in Middletown Probate Court."

The plaintiff did not appeal from either judgment.[13] Both the October 13, 2017 and February 2, 2018 judgments became final. The plaintiff did not file the present declaratory judgment action in the Superior Court until February 14, 2018.

To address the defendants' argument concerning standing, which all parties have briefed on appeal, we first must address the judgments of the Middletown Probate Court relating to whether it found that the plaintiff met the statutory standards for continued commitment. On March 21, 2025, we ordered the parties to augment the record on appeal to include any orders or memoranda of decision issued by the Probate Court in connection with the hearings it held on October 13, 2017, and February 2, 2018. In a response dated March 27, 2025, the parties promptly provided this court with a stipulation including the decree regarding the October 13, 2017 proceeding and relayed the Probate Court's response that there was no formal memorandum for the February 2, 2018 hearing.

The October 13, 2017 probate order tracks the governing statute, § 17a-498 (c) (3) and (g), regarding the continuance of civil commitments in a hospital for psychiatric disabilities. That statute provides that, to continue

---

[13] The state claims that the plaintiff was under a conservatorship at all relevant times pursuant to General Statutes § 45a-644 (b) and her conservator had the authority to act on her behalf with respect to authorizing an appeal from a decree of probate affecting her. We do not find evidence of that in the record, as the reference to the plaintiff's conservator cited by the defendants mentions the conservator only in the context of developing the plaintiff's plan of care for her discharge to the Lotus Home facility.

However, in addition, the state claims that the plaintiff was being assisted by an attorney through the Connecticut Legal Rights Project on October 24, 2017, which was well within the forty-five day period in which she could appeal from the Probate Court's October 13, 2017 decision. We do find evidence in the record of that. In the filings in connection with the trial court's adjudication, Connecticut Valley Hospital's integrated progress notes indicate that the "CLRP . . . advocates" had been present at an October 24, 2017 conference held on the plaintiff's behalf. CLRP is an acronym for the Connecticut Legal Rights Project.

such commitment, the probate court must make a finding by clear and convincing evidence:

(1) That the person has psychiatric disabilities and is dangerous to himself or others,

OR

In the alternative to finding that the person is dangerous to himself or others, (2) that the patient is "gravely disabled."

See General Statutes § 17a-498 (c) (3) and (g). Additionally, if the court finds by clear and convincing evidence that the person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, the court shall make an order for the person's commitment, considering whether or not a less restrictive placement is available. See General Statutes § 17a-498 (c) (3).

In its October 13, 2017 decree, the Probate Court found that the plaintiff "has psychiatric disabilities" and is "gravely disabled." Also as required by § 17a-498 (c) (3), it found that "a less restrictive placement [was] not available" at that time.

The defendants argue that the plaintiff's "entire case rests on the false premise that she no longer met the civil commitment standard when her clinicians deemed her 'discharge ready' on August 2, 2017," and that the trial court lacked jurisdiction to review any claim about the Probate Court's authority to compel placement in a less restrictive setting because, inter alia, the plaintiff lacks standing. Specifically, because the Probate Court found that the plaintiff continued to meet the standard for civil commitment, the defendants argue that, pursuant to the authority of *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 982 A.2d 1053 (2009), the plaintiff does not

have a "personal and legal interest" that has been "injuriously affected." (Internal quotation marks omitted.) Id., 214–15.

We agree with the defendants that the plaintiff was adjudicated by the Probate Court in a final judgment dated October 13, 2017, and that, because she continued to meet the statutory standard for civil commitment, she does not have the specific personal and legal standing to assert her claims for declaratory relief. We also conclude that she lacks standing to assert her claim that she and others are not given timely due process probate hearings. We conclude that she lacks standing to assert that claim because she received prompt attention and docketing of matters relating to her continued commitment by the Middletown Probate Court.

In reaching this conclusion, we reject the premise underlying all of the plaintiff's claims that she no longer met the standard for civil commitment and that there must be immediacy to a less restrictive alternative to hospitalization, once she was deemed "discharge ready." Section 17a-498, which governs the procedures for involuntary civil commitment, does not use the term "discharge ready," and the plaintiff points to no authority that supports the implicit assumption that the concepts are interchangeable. The Probate Court, instead, found that the plaintiff had psychiatric disabilities and was "gravely disabled," in accordance with § 17a-498.

As set forth previously in this opinion, in her complaint, the plaintiff alleged that she was bringing the present action to, inter alia, "enforce the substantive constitutional rights established in [*Fasulo* v. *Arafeh*, supra, 173 Conn. 473][14] to liberty *as soon as the person*

---

[14] As explained previously in this opinion, *Fasulo* held that "the due process clause of the Connecticut constitution mandates that involuntarily confined civilly committed individuals be granted periodic judicial reviews of the propriety of their continued confinement." *Fasulo* v. *Arafeh*, supra, 173 Conn. 479. Our Supreme Court stated: "Commitment must be justified on the basis of a legitimate state interest, and the reasons for committing

*does not meet commitment standards*" and "to require the state to measure the need and create capacity for residential supports and services in the community so that a person shall be discharged to the most integrated setting appropriate with their needs *within a reasonable time of not meeting state standards for civil commitment.*" (Emphasis added.) The plaintiff claimed that § 17a-498 (g) violates the state constitution because "the vast majority of patients committed to state operated inpatient psychiatric facilities stabilize and *no longer meet commitment standards long before the mandatory two year review*, resulting in significant numbers of patients being unnecessarily institutionalized and segregated." (Emphasis added.) She also claimed that patients "have a constitutional right to be discharged *as soon as they no longer meet commitment standards*" and "as soon as their present mental status indicates that they are not a danger to self or others or gravely disabled."

On appeal, the plaintiff continues to premise her claims on her contention that she and other patients like her no longer meet the standard for civil commitment, or likely no longer meet that standard, after being declared discharge ready. For instance, in her brief to this court, the plaintiff argues that, pursuant to *Fasulo*, "the due process clause of the Connecticut constitution

a particular individual must be established in an appropriate proceeding. Equally important, confinement must cease when those reasons no longer exist. . . . To satisfy due process, the procedure for releasing a civilly committed patient must be adequate to assure release of those who may no longer constitutionally be confined. Due process is a flexible concept, the content of which must be renewed each time it is used to measure the adequacy of challenged procedures." (Citations omitted; internal quotation marks omitted.) Id., 476–77. Subsection (g) of § 17a-498, which went into effect after the *Fasulo* decision was released, addressed these concerns by providing the opportunity for an annual review and a hearing at least every two years, with the patient's continued commitment being evaluated based on the same standard as the initial commitment. See id., 481–82; see also Public Acts 1976, No. 76-227, § 3; Public Acts 1977, No. 77-595, § 3.

creates a liberty interest not to be held in a state psychiatric hospital *when their present mental status indicates that they no longer meet commitment standards*," and "the probate court must have authority to order the discharge of a patient *who no longer meets the legal standard for commitment* to a less restrictive setting." (Emphasis added.) In addition, she claims that she and her proposed classes' right to constitutional liberty "is violated by state actors when they are held in a state operated inpatient psychiatric hospital without a timely commitment review hearing *after they no longer meet the legal standard for civil commitment*." (Emphasis added.)

In reviewing the plaintiff's claims, it appears that the plaintiff incorrectly assumes that her classification as "discharge ready" meant that she no longer met, or likely no longer met, commitment standards. However, pursuant to the Probate Court's October 13, 2017 finding, the plaintiff had "psychiatric disabilities" and was still considered "gravely disabled," and, therefore, she still met the legal standard for civil commitment. The plaintiff did not appeal from the Probate Court's judgment within the forty-five day period set forth in General Statutes § 45a-186 (b). Furthermore, in *Fasulo*, the court held that, to satisfy due process concerns, "[t]he state's power to confine terminates when the patient's condition no longer meets the legal standard for commitment. Since the state's power to confine is measured by a legal standard, the expiration of the state's power can only be determined in a judicial proceeding which tests the patient's present mental status *against the legal standard for confinement*." (Emphasis added.) *Fasulo* v. *Arafeh*, supra, 173 Conn. 479.

Moreover, the plaintiff continues to take issue with the two year review period set forth in § 17a-498 (g). She has not shown that she has standing to assert that

claim. She received an annual review and prompt scheduling for hearings thereafter. She has not shown that she has been injuriously and specifically harmed. She personally had promptly received a state initiated annual hearing in October, 2017, only two months after she was designated "discharge ready." The Probate Court held another hearing in February, 2018, only four months after the annual hearing, and the plaintiff was expeditiously released to the Lotus Home facility in March, 2018, once that placement became available to meet her continuing clinical needs. As previously noted, Lotus Home is a facility for "challenging, high-risk female clients that require on-site, 24 hours a day, 7 days a week (24/7), supervision," where the plaintiff remained for two years. Accordingly, we conclude that the plaintiff does not have the specific personal and legal interest that has been "specially and injuriously affected"; (internal quotation marks omitted) *State* v. *Long*, supra, 268 Conn. 532; in order to have standing to assert her claims for declaratory and injunctive relief.

## II

The plaintiff also requests this court to review the trial court's denial of her February 1, 2023 motion for class certification with respect to her claims. We have concluded, however, in part I of this opinion, that the claims underlying the plaintiff's putative class action fail because she lacks the specific, personal and legal interest in the subject matter of the challenged action as distinguished from a general interest of the community as a whole and has not shown that any such interest has been specially and injuriously harmed and affected by the challenged action. Because the plaintiff's claims fail, her request for class certification fails with it.

Practice Book § 9-7 contains four elements for class certification, namely, numerosity, commonality, typicality, and adequacy of representation. See *Rodriguez*

v. *Kaiaffa, LLC*, 337 Conn. 248, 254, 253 A.3d 13 (2020). The typicality element requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Practice Book § 9-7 (3).

"[T]here cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class. . . . [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class." (Internal quotation marks omitted.) *Macomber* v. *Travelers Property & Casualty Corp.*, 277 Conn. 617, 633, 894 A.2d 240 (2006).

Accordingly, in the present case, because the plaintiff lacks standing to raise her claims; see part I of this opinion; she also lacks the requisite typicality to raise those same claims on behalf of a class.

The judgment is reversed only as to the form of the judgment and the case is remanded with direction to render a judgment of dismissal.

In this opinion the other judges concurred.